1837.

Hutchinson
v.
Smith.

## HUTCHINSON vs. SMITH and others.

Where a partnership is dissolved by the death of one of the copartners, the property and effects of the firm must be applied in payment of the copartnership debts in preference to debts due by the individual members of the firm. And the surviving partner has therefore no right to assign the partnership effects for the payment of such individual debts, and to leave the debts of the firm unprovided for.

If the money of a third person, which is in the hands of one of the members of a copartnership as a trustee or otherwise, is applied by him to the use of the firm with the knowledge and consent of all the copartners, such third person has a claim upon the company for the repayment of the money.

Previous to the adoption of the revised statutes, the surviving copartner might, with the assent of the legal representatives of the deceased partner, make a valid assignment of the copartnership effects to a trustee for the payment of the debts of the firm, giving therein a preference in payment to some of the creditors over others.

It seems, that since the adoption of the revised statutes, the surviving member of an insolvent firm is not authorized to give such preference to some creditors of the firm over others; and that an assignment of the partnership effects to a trustee, for the purpose of securing a preference to some of the creditors is invalid.

August 28.

THE facts in this case are so fully stated in the opinion of the chancellor, that it is deemed unnecesary to repeat them here.

The following opinion was delivered by the vice chancellor upon making the decree appealed from:

GARDNER, V. C. The first question in this case is, whether Phelps as surviving partner had the right to transfer all the partnership property to assignees for any purpose. As a copartner, he had the right to buy and sell, pay and receive, and to bind the firm by his contracts. (16 *John. Rep.* 491.) He possessed the power, under certain circumstances, to make a valid assignment of all the partnership effects for the purpose of paying the debts of the firm during the lifetime of his copartner. (*Harrison* v. *Steny,* 5 *Cranch,* 289. 3 *Paige,* 519.) As surviving partner, he had a legal title to the partnership effects. And in

1837.

Hutchinson
v.
Smith.

equity he is considered a trustee to pay the partnership debts, and to dispose of the effects of the concern for the benefit of himself and the estate of his deceased partner. (3 *Paige*, 398.) Clothed with the legal authority to dispose of the partnership effects, it follows that the exercise of that authority will be sustained in equity, if the disposition be for the common benefit of himself and the estate of his deceased partner. This principle is established in the case of *White* v. *Union Iron Co.* (1 *Nott & McCord's Rep.* 556,) where the assignment made by a surviving partner was held valid. It was urged by the complainant's counsel that a personal confidence was reposed by each member of the firm in his copartner, in his skill, integrity, &c. and that this could not be delegated to others. The answer is, that an assignment is a measure frequently resorted to in mercantile transactions, in order to wind up the affairs of a copartnership. Circumstances frequently occur which renders such a proceeding not only expedient, but indispensably necessary for the best interests of the copartners and their creditors. Why, then, may not the confidence which is reposed extend to this measure as well as others? and why may not the skill, the sound discretion, and the integrity of a copartner be exercised in ascertaining the time when, and the manner in which, an assignment should be made, as properly as on selecting the provisions of any other contract in behalf of the copartnership? There is certainly no authority for the distinction, and there seems to me to be none in principle. Admitting, however, the authority of Phelps to assign the choses in action of the firm, it was objected that authority did not extend to the stock in trade.

It is said that as to the goods and chattels, he was but a tenant in common with the personal representative of the deceased partner. But is not this doctrine confined to the surplus, after the copartnership debts are satisfied? A copartnership is not absolutely dissolved by the death of one of the partners; it has a limited continuance, for the purpose of settling the affairs of the concern, and this duty devolves exclusively upon the surviving partner, and therefore he is entitled to the possession of the goods and chattels. (*Allen*

v. *Kible*, 4 *Mad. Rep.* 469.) Chancellor Kent says the surviving partner is alone suable at law, and he is entitled to the possession and disposition of the assets, to enable him to discharge the debts and settle the concern. (3 *Kent's Com.* 63. *Kemp* v. *Andrews, Carthew's Rep.* 170.) But if I am wrong, in this case we have the assent of the administrator of Smith to this assignment. Cuyler, one of the defendants, is both assignee and administrator. His assent is therefore presumed. It is objected, however, that he is one of the preferred creditors, and therefore has a direct interest in sustaining the assignment. The answer to this objetion, I think, is furnished by the case of *Egberts* v. *Woods*, (3 *Paige*, 526.) The chancellor there says, the administrator has the right to insist that the partnership effects shall be applied to the payment of the debts of the firm, as the estate of the deceased may be made eventually liable for the payment. He has, however, no interest in the question as to what debts shall be paid first, in case the partnership effects are insufficient to pay the whole. And the legal right being vested in the survivor, he alone has the right at law to determine this question.

It appears from the proceedings in this case that the firm was insolvent at the death of Smith. Phelps as surviving partner has determined the question of priority, and the sole duty of Cuyler as administrator was to see that the partnership effects were applied to the payment of the debts of the firm ; and that I assume to have been done by the terms of the assignment. If I am correct in this supposition, I can perceive nothing in the fact that Cuyler was a preferred creditor, that should operate against the assignment to deprive him of the right of assenting thereto if his assent was necessary.

Another objection to the assignment is, that it secures a debt due to the county of Monroe, which debt, as the bill charges, was a private debt of Smith's. Smith it seems was treasurer of the county, and the answer, which in this respect is responsive to the bill, states that the monies received from the different collectors were mixed with and used in the same manner as the other funds of the firm, &c.

The trust fund, with the knowledge and approbation of Phelps, was therefore received and appropriated by the firm to the use of the copartnership. I can perceive no good reason why this might not be reached in equity in their hands; at least, in case of the insolvency of the sureties of Smith, as both parties have assented to the appropriation of the money to the business of the concern.

If the creditors are now reaping the advantage by the appropriation of the increased dividend which they will receive, with what propriety can the assignment which provides for the payment of the same be deemed a fraud upon either? At all events, the personal representative of Smith has no reason to complain. If it was a private debt, then the estate of Smith would be exclusively liable. And if the estate of Smith is not injured, his representatives would have no right in equity to impeach the assignment. Suppose this ground: are the creditors of the firm in any better situation? They have no lien, no equity against the joint effects but such as they claim through the medium of the partners themselves. As against creditors, says the chancellor in the case cited, if the creditor of the firm does not take the remedy that the law gives him by actions and by proceedings to seize the joint effects, he has no lien upon them. His equity to have the joint effects applied to the joint debts is through the medium of the deceased partner. (*Ex parte Petra*, 2 *Vesey & Beame*, 172. *Campbell* v. *Mendil*, 2 *Swanst.* 575. 1 *Mad.* 197.) It seems to me that these authorities dispose of the objection, even if the answer and the assignment furnished no evidence that this demand was legally and equitably due from the copartnership.

The last objection is, that the assignment was procured from Phelps by false representations. This is denied by the defendants; but they admit that they told him that it was his duty to assign, and that it would be for his interest. Phelps had undoubtedly the right to secure or pay one creditor in preference to another. And in *Grover* v. *Wakeman*, the chancellor says that the right is founded upon the supposition that there may be creditors who may have peculiar claims upon the property of the debtor, and of

1837.

Hutchinson
v.
Smith.

1837.

Hutchinson
v.
Smith.

which the surviving partner was the most competent to judge. When these peculiar claims exist, and they are to be found in this case if any where, it surely cannot be deemed fraudulent in creditors to urge the exercise of this right in reference to their claims as a duty upon the part of their debtor. The expression as to the interest of Phelps is not entitled to very grave consideration as an evidence of fraud. The defendants might have honestly supposed that an assignment was called for by the best interest of the co-partnership; and of course, the measure in that case would be for the interest of Phelps. It might be for his interest, so far as his reputation and future prospects were concerned, since the commercial community view the neglect or refusal of a debtor to secure his confidential creditors, as highly dishonorable. They could not mean, nor could Phelps so understand it, that he was to reap any pecuniary advantage at the expense of the creditors. For by the assignment he lost all the control of the property, and they acquired it, subject to the trust; and for the faithful execution of which they must have known that they would be held strictly responsible.

Upon the whole case, I am of the opinion that the bill must be dismissed with costs, as to Smith, Cuyler and Caldwell.

S. Stevens, for the appellants. The assignment under which the defendants claim the property, credits and effects of the late firm of Smith & Phelps, is utterly void. Phelps, the surviving partner of Smith & Phelps, had no legal or equitable authority, after the dissolution of the partnership, by the death of Smith, to make a general assignment of all the partnership property and effects to trustees, in trust, and to give preference to one class of creditors over another. (*Gow*, 54. 5 *Paige*, 31. *Gow*, 253, 256, 257. 1 *Cowp. R.* 148. *Gow*, 240. 3 *Kent's Com.* 55, 57, 58, 59. 4 *John. Ch. R.* 685. 1 *Paige*, 398. 4 *John. Ch. R.* 522.) The assignment gives a preference to a large debt due from Smith to the county of Monroe, as treasurer of the county, over the creditors of the firm. Cuyler, one of the

defendants and assignees, is one of the sureties of Smith as treasurer. Smith is admitted to have died insolvent. This is a fraud upon the postponed creditors of the firm, perpetrated to subserve the interests of one of the assignees, which should render the assignment void. The assignment was obtained by the defendants by misrepresentations, and by taking undue and improper advantage of the time when and the circumstances under which it was obtained. The assignment being void, the defendants acquired no right or title to the property and effects of the firm under or by virtue thereof. If the assignment shall be deemed valid as to the partnership securities or choses in action, still it is submitted that it is void as to the residue of the property, consisting of the stock of goods, &c. as to which the surviving partner was merely tenant in common with the representatives of the deceased partner.

*J. Rhoades & C. M. Lee,* for the respondents. The assignment was fairly and properly obtained from Phelps, by the respondents Smith and Cuyler. (*Cunningham* v. *Freeborn,* 3 *Paige,* 557.) The debt due to the county of Monroe was a debt of the firm. Phelps, the surviving partner, had a legal and equitable right to make such assignment; and he had also the right and the power to give preferences. (*Egberts* v. *Wood,* 3 *Paige,* 521.) The necessary parties are not before the court to warrant a decree for the specific relief prayed for by the bill; and that relief is inconsistent with any relief which can be granted under the general prayer.

THE CHANCELLOR. This is an appeal from a decree of the vice chancellor of the eighth circuit, dismissing the complainants' bill with costs as to the defendants, who appeared and answered. The facts upon which the rights of the parties depend are, for the most part, undisputed. It appears that Samuel M. Smith of Rochester purchased a stock of goods, and commenced the business of merchandise on the first of January, 1827; at which time, and down to the time of his death, he was the treasurer of Monroe

1837.

Hutchinson
v.
Smith.

county. That in the spring of the same year, he made a considerable addition to his stock of goods; a part of which was paid for by money in his hands as county treasurer. That about the first of August in the same year Smith agreed to take into partnership with him, in the business, L. A. Phelps, who had previously been his clerk; that they agreed that the partnership should be deemed to have commenced on the first of January; that the stock of goods which Smith had then on hand should be put into the concern; and that the debts due from Smith on account of goods subsequently purchased, and before the first of August, should be paid out of the proceeds of the sales thereafter to be made and the debts due for goods already sold. Phelps was to put $1000 into the firm, and Smith was to draw certain specific sums out of the proceeds of the sales, for his own private use. Smith was then to be permitted to retain $500 out of the profits of the business; and the residue of the profits were to be divided equally between the partners. The business was continued under this arrangement until the latter part of July, 1829, when Smith died; at which time, as it afterwards appeared, the firm was insolvent. Immediately after the funeral, the defendants Cuyler and P. Smith, who were liable for large sums as endorsers for the firm, and as sureties in the bond to the county for the faithful performance of S. M. Smith's duties as treasurer, persuaded Phelps, the surviving partner, to make an assignment of all the partnership property and effects to them and J. Caldwell, to be applied to the payment of those debts, and to distribute the residue, if any, ratably among the other creditors; which was done accordingly. And a few days thereafter letters of administration on the estate of S. M. Smith were granted to the defendant Cuyler, one of the assignees. The funds assigned were not sufficient to pay the debts of the firm by several thousand dollars. And the complainants, who were not among the preferred creditors, having obtained judgments for their debts and issued executions thereon, filed their bill to set aside the assignment and to have the partnership effects applied to the payment of their debts.

One of the objections made to the assignment is, that the money due to the county is not a debt for which the partnership was liable; but that it was the private debt of S. M. Smith, the deceased copartner. If this were so, the assignment, so far as it provides for the payment of that debt before the payment of all the debts of the firm, could not certainly be sustained; for upon the death of one of the partners, the copartnership funds must be applied to pay the debts of the firm before the separate creditors can have any claim thereon. I think, however, upon the pleadings in this case, and neither of the parties have introduced any proofs to sustain their respective allegations, the debt to the county must be considered as a partnership debt. It is stated in the assignment to be a debt due from the firm. And the defendants in their answer state upon their information and belief facts, which if they really existed at the time of the death of S. M. Smith, would have rendered the copartnership liable for the monies which had come to his hands as the treasurer of the county. (*Smith* v. *Jameson*, 5 *Term Rep.* 601. In the case of *Jaques* v. *Marquand*, (6 *Cowen's Rep.* 497,) the supreme court very correctly decided that my agent to whom I have entrusted monies, or who has received monies for my use, cannot, by putting those monies into a mercantile firm in which he is a copartner, destroy my claim against him individually, and make me a creditor of the firm without my consent. But the court in that case did not decide that if my money is applied to the use of the firm, with the knowledge and consent of all the copartners, although without my consent, I may not elect to consider the firm as my debtors, and recover the money they have thus received, in an action for money had and received to my use. The case might perhaps be different if the partner had used the money in the business of the firm, and credited himself with it in the accounts of the firm without any knowledge on the part of his copartners that the money thus used belonged to another person. Although the facts set up in this part of the answer are not stated as matters within the knowledge of the defendants, they are sufficient to put in issue the allegation in the bill

**Vol. VII.** 5

1837.

Hutchinson
v.
Smith.

that this was not a debt for which the partnership was liable; so as to require some evidence on the part of the complainants to sustain that allegation in the bill, and to show that the recital contained in the assignment was false. Again; as I understand the terms of the copartnership, as stated in the bill, it appears by the complainants' own showing that the firm was liable for the money of the county which had been applied to the purchase of goods for the firm in the spring of 1827. Although this purchase was made previous to the formation of the copartnership, yet when it was formed, by the express agreement of the parties it was to have relation back to the first of January, 1827. The stock of goods then on hand was to be considered as put into the firm, and the goods which had been theretofore purchased were to be paid for by the firm; or rather, the debts contracted for goods after the first of January, 1827, were to be thus paid. If the funds of the county, therefore, had been applied for the purchase of goods subsequent to the first of January, 1827, that debt, by the terms of the copartnership articles, was to be paid by the firm out of the proceeds of the sales of the goods. On the whole, there can be very little doubt that this debt to the county was one for which the partnership was liable; and which for that reason might properly be provided for in the assignment, if the assignment itself was proper in other respects.

It does not appear to be settled what is the precise nature of the interest of the surviving partner in the personal property of the firm in possession, at the death of his copartner. Some writers appear to consider the surviving partner as a mere tenant in common with the personal representative of the deceased partner in the goods, at law as well as in equity; while others consider him as having the whole legal title, but subject to the claims of the creditors of the firm, and to the equitable rights of the personal representatives of the decedent. In the recent case of *Newell* v. *Townsend*, (6 *Sim. Rep.* 419,) the vice chancellor considered the legal title as vested in the survivor from the death of the copartner; and therefore restrained the judg-

ment creditor of the deceased partner from taking the goods in execution, by a fieri facias, tested before but not actually issued until after the death of the deceased partner.

Wherever the legal title may be, there is no doubt that for certain purposes, the partnership continues, and that the surviving partner, in virtue of the confidence originally reposed in him by his copartner, retains the right, as the sole acting manager of the joint concern, to collect the monies due and convert the property of the firm into money and pay the debts. (*Philips* v. *Atkinson*, 2 *Bro. Ch.* 272. 3 *Kent's Com.* 57.) And the representatives of the deceased partner cannot take the closing up of the affairs out of the hands of the survivor, if he is perfectly responsible and proceeds with fairness and due diligence in the discharge of that duty. In the present case, however, it cannot be material to enquire whether the legal interest in the property in possession was in the surviving partner solely, or in him and the personal representative of the decedent jointly as tenants in common; as one of the defendants who has answered, sustains the character of personal representative of the decedent as well as that of assignee of the survivor. And as this transaction took place before the adoption of the revised statutes, when the personal representative had a right to retain for his own debts or for those which were due to him jointly with others, and when he had the legal right to prefer one creditor of the same class over another, the rights of the preferred creditors under the assignment are the same as if the personal representative of the decedent had joined in an assignment to trustees, giving them the same preferences; the personal representative having acted with the other assignees in the execution of the trust, and thereby sanctioned the assignment made by the surviving copartner. I am inclined to think that the principles adopted by the revised statutes in prohibiting preferences from being given in the distribution of the estate of a deceased person among his creditors, and depriving insolvent debtors of the benefit of the insolvent laws where they give such preferences after they have become insolvent, ought to be applied to the case of a surviving partner who is insolvent,

1837.

Hutchinson
v.
Smith.

and who should attempt, even with the consent of the representative of the decedent, to make a general assignment of the property of the partnership for the benefit of favorite creditors, to the exclusion of others whose claims upon the the property are equally meritorious. It is not necessary, however, to determine that question here, as this case must be decided according to the legal principles which prevailed when this assignment was made, and when the administrator of S. M. Smith assented that such preferences should be given.

There is no admission of fraud in the answer of the defendants, or of facts from which fraud can be legally inferred, if the assignment is not of itself evidence of fraud. The inducements held out to the surviving partner to persuade him to make the assignment, are those usually employed by creditors who wish to obtain a preference in payment out of the property of an insolvent debtor. In all such cases it is urged upon the debtor as a duty to give the desired preference; when in nine cases out of ten it would be his duty, as an honest man, to resist such importunities, and to place all his creditors upon an equality. But until the legislature interferes to prevent these general assignments and preferences and to compel insolvent debtors to render equal justice to all their creditors, no court is authorized to say that arguments of this description, although in themselves unsound, if merely used to induce the debtor to do what he has the legal right to do, can render his act fraudulent and void as against other creditors.

The complainants' bill is not properly framed for an account and distribution among all the creditors under the assignment, as it is filed in behalf of the judgment creditors only, with a view to set aside the assignment as fraudulent and void, and to have the proceeds of the assigned property applied to the payment of the judgment creditors. The bill was therefore properly dismissed. (*Cunningham* v. *Freeborn*, 11 *Wend. Rep.* 240.) And the decree of the vice chancellor must be affirmed, with costs.