OSWIN WELLES and others *v.* PETER S. MARCH and ISRAEL
COE, impleaded with MATTHEW H. NACE.

The authority of each of several partners, as agent of the firm, is necessarily
limited to transactions within the scope and object of the partnership, and
in the course of its trade or affairs.

A general assignment to a trustee, of all the funds and effects of the part-
nership, for the benefit of creditors, is the exercise of a power without the
scope of the partnership enterprise, and amounts, of itself, to a suspension
or dissolution of the partnership.

No such authority as that, in one of several partners, can be *implied* from
the partnership relation.

And if one partner executes such an assignment, without the consent or
authority of the rest, it will be void, and will not operate to pass to the
assignee the title to the firm property.

But where N., who had been the active partner in a firm, absconded, leaving
it largely insolvent, first writing a letter to C. his partner, in which he
declared that he could not manage the debts of the firm; that he would
be far out to sea before C. could receive the letter; that he was going to
California, where he would start again in business with $2,100 of the funds
of the firm, which he had taken with him; adding, "I hereby assign you
my interest in the business of N. & Co.," &c.; also "Take charge of every
thing in *our* business; close it up speedily," &c.; *Held* that this, under the
circumstances, was a full assent on the part of N., and an authorization
to C. to execute an assignment of the partnership property, and rendered
an assignment executed by C. a valid and operative instrument, as against
him, N.

*Appeal from a judgment of the Supreme Court.*

THE action was brought by the plaintiffs, as judgment
creditors of the firm of Nace & Co., to set aside an assign-
ment in trust for the benefit of creditors without prefer-
ences, of the assets of that firm. The complaint was framed
to set aside the assignment on the ground that it was made
to hinder, delay and defraud the creditors of the assignors,
and it contained no charge that the assignment had failed
for want of power to execute it, or otherwise. The only
material issue presented by the pleadings was one of
fraud.

The cause was brought to trial at the New York special

term, in January, 1858, before Mr. Justice DAVIES, without a jury. The plaintiffs gave evidence, which they claimed tended to show the assignment to be fraudulent in fact, and rested. The defendants then introduced rebutting evidence. The defendant Coe (who was one of the firm of Nace & Co.) was examined as a witness. He testified that Nace, his partner, absconded on Saturday, the 19th of April, 1856, and that the letter shown to him, of that date, in the hand-writing of Nace, and addressed to the witness, was received by him on the Tuesday following. The counsel for the defendants thereupon offered the letter as evidence of the assent of Nace to the assignment to the defendant March. The counsel for the plaintiffs objected to it on the ground that no assent was set up in the answer, and that it was contradictory to the assignment, and also on the ground that the letter contains no authority or assent, and the assignment in question was not an execution of any power, except the power which one partner possesses by virtue of his partnership relations, which objection the court over-ruled, and admitted the letter in evidence, the plaintiffs' counsel excepting. The letter is as follows:

"NEW YORK, *April* 19, 1856.

"Mr. Coe: My dear sir—Judge not harshly of me, although I have involved you, with myself, in considerable difficulty. You will find I have in the concern, paid in cash, over $15,000, which will pay all we owe, with the stock on hand, and leave me a surplus, after paying up Hannah & Shanks and Lockett & Pankey (whom please pay after you pay our debts), about $9,000, say nine thousand dollars, which you will please pay over to my brother W. M. Nace, to whom I am indebted. I have given him a bill of sale of my household goods to secure him also. I will be far out to sea before you receive this. But I can not close without assuring you that every effort of my life shall be exerted to reinstate myself in public confidence. Take charge of every thing in our business; close

it up speedily. Nace & Reinnie owe me about $8,000, loaned in various ways. To prevent embarrassment to our new concern, I have loaned this amount in money, notes, &c. C. Storm has a mortgage on my house to secure $2,000, which I never received from him or any one. I owe him nothing. I was to get, according to agreement, all the interest of his wife and Mrs. Ann Storm in the concern of Nace & Reinnie, but have received not the first cent.

"I take with me $2,100, which is charged on our check books (ours and N. & R.'s). This I will use to start in California, whither I shall sail on Monday, at two o'clock.

"I hereby assign you my interest in the business of Nace & Co., and Nace & Reinnie also.

"My dear, dear children—God bless them! I shall send to my father to remain until I can claim them again. Great God! how can I atone for this act? It may drive me to self-destruction. I hoped all along to be able to pay Nace & R. out of debt, but the assets will not come in fast enough. Our own debts are maturing, and all I can not manage. Forgive me. You will lose nothing, but it will require much care to get through.

"Your friend,

"M. H. NACE."

Further evidence was given touching the question whether the assignment was made to hinder, delay and defraud the creditors of Nace & Co.

The judge found the following facts:

1st. That the firm of F. H. Boek & Co., on the 12th July, 1856, recovered two judgments against Matthew H. Nace and Israel Coe; one for $1,074.47 and another for $825.76; that on 16th October, 1856, they obtained three other judgments against the same defendants; one for $847.01, one for $847.26, and another for $768.76. That on the 15th November, 1856, they recovered another judgment against the same defendants, together with one Charles Trowbridge, for $1,126.07.

2d. That during the pendency of the actions in which such judgments were recovered, and on 28th June, 1856, the plaintiffs, Danenhower & Harris, became the owners of the claims on which said judgments were recovered, by transfer from Bock & Co.

3d. That on 22d August, 1856, the said Danenhower & Harris recovered a judgment against the defendants Nace & Co. for $656.26; on the 30th September, 1856, another for $945.24; and on 20th October, 1856, another for $609.35.

4th. That Oswin Welles, one of the plaintiffs, on the 28th October, 1856, recovered a judgment against the defendants, Nace & Coe, for $1,729.14.

5th. That before the commencement of this action, transcripts of all of said judgments were filed in the proper county, and executions issued thereupon respectively, and each returned wholly unsatisfied before the commencement of this suit.

6th. That from January, 1856 to April 26, of the same year, the defendants Matthew H. Nace and Israel Coe, were copartners in trade in the city of New York, under the name of Nace & Co.

7th. That all the above mentioned judgments were recovered upon the joint obligations of said copartnership of Nace & Co., incurred by said firm, on and previous to the 19th April, 1856.

8th. That up to the said 19th April, 1856, Coe had taken no active part in the transacting of the business of the firm.

9th. That on the 19th of April, 1856, Nace absconded from the city of New York, and took with him a large amount of the assets of the firm, leaving the letter of that date directed to his partner Coe, offered by the defendants, and read in evidence herein; and that said letter was received by Coe, on the 22d April, 1856.

10th. That on the 25th April, 1856, the firm of Nace & Co. was dissolved.

11th. That after such dissolution, and before making the

assignment to the defendant March, hereinafter mentioned, Coe sold goods of the late copartnership on credit.

12th. That on the 12th June, 1856, Coe, one of the partners, executed the assignment to the defendant March, annexed to the complaint, and read in evidence.

13th. That the letter of the 19th April, was an authority from Nace & Coe to execute the assignment.

14th. That said assignment was made on the eve of the obtaining of the first two judgments by Bock & Co., and with the intent to prevent Bock & Co. from getting a preference by execution.

15th. That after the making of the assignment, the assignee sold most of the assigned property on credit, with the connivance of the defendant Israel Coe.

16th. That the assignment to the defendant March was not made to hinder, delay and defraud the creditors of Nace & Co.

The conclusions of law of the judge were:

1st. That the defendant Coe had not the power to make such assignment without the authority of his copartner Nace, and that no interest in the copartnership property passed thereunder, unless there was such an authority; and the fact that said assignment is not preferential, makes no difference in the principle of law applied to this case.

2d. That the letter of April 19th, 1856, was an authority from Nace to Coe to make the assignment in question.

3d. That the dissolution of the firm of Nace & Coe on the 25th April, 1856, did not change the rights and powers of the partners, and the subsequent assignment by Coe was a valid act, notwithstanding such dissolution.

4th. That such assignment was a valid instrument, and passed the copartnership property to the assignee.

The plaintiffs excepted to the last three conclusions of law, and also to the 13th and 16th findings of fact, and that part of the 9th finding of fact which finds that Nace took with him a large amount of the assets of the firm.

Judgment was entered at special term for the defend-

ants dismissing the plaintiff's complaint.   On appeal to the general term from the judgment, the same was affirmed. The plaintiffs then appealed to this court.

*Alex. S. Johnson*, for plaintiffs.

*John Sessions*, for defendants.

Wright, J.   The action was brought against the defendants March, Coe and Nace (the two latter composing the firm of Nace & Co.), to set aside an assignment of the copartnership property, on the ground that it was made to hinder, delay and defraud the creditors of the assignors. Fraud was the only material issue presented by the pleadings; and the court found that there was none in the transaction.   The case made, justified no other conclusion.   The assignment appropriated the firm assets to the payment of all the partnership creditors; and the fact that the instrument was executed with the intent to prevent one of the firm creditors from getting a preference by execution, and thereby secure an equal distribution of the partnership effects among all the creditors, did not tend to establish the fraudulent purpose alleged.

But one of the partners had absconded, taking with him a large amount of the assets of the firm, and the assignment was made by the other partner.   On the ground that the re-assignment was executed by Coe in the firm name, it was first claimed at the trial, that the instrument was invalid, and no interest in the property passed thereunder. The defendant Coe executed it some two months after Nace left, and it was not preferential.   But it is urged, however (and this was the view of the court below), that without the consent or authority of his copartner, he had no power to make even an assignment not preferential; and further (which the court did not agree to), that there was no such consent or authority shown.

The right and power of one partner to make a general

assignment of all the funds and effects of the partnership, to a trustee, for the payment of debts, has undergone much discussion in the courts. The point was distinctly presented to this court in the case of *Robinson* v. *Gregory et al.*, decided at the last December term. In that case, two of three partners made the assignment, giving preferences, without the knowledge, consent or authority of the third partner, and in his absence from the country; and he never, in writing or verbally, assented to it, but, on the contrary, dissented. We held the assignment invalid; our judgment proceeding upon the ground that it was not competent for the two partners, without the assent or authority of the third, to make a general assignment of the partnership property to a trustee, for the payment of debts. Our opinion was that no such power could be implied from the partnership relation. Each partner possesses an equal and general power and authority in behalf of the firm, to dispose of the partnership property and effects, for any and all purposes within the scope of the partnership and in the course of its trade and business. As agent of the firm he may sell or mortgage, pledge, apply or otherwise dispose of the firm effects, for partnership purposes; may assign the firm property as a security for antecedent debts, as well as debts thereafter to be contracted on its account; and there are cases holding that his authority even extends to a transfer or pledge of *all* the partnership effects directly to a creditor, in payment or for the security of a debt due from the company, though the tendency and ultimate effect of such a transaction may be to destroy the partnership business. (*Mabbett* v. *White*, 2 Kernan, 442, and cases cited.) But the authority of each of several partners, as agent of the firm, is necessarily limited to transactions within the scope and object of the partnership, and in the course of its trade or affairs. A general assignment to a trustee, of all the funds and effects of the partnership, for the benefit of creditors, is the exercise of a power without the scope of the partnership enterprise, and amounts, of itself, to a sus-

pension or dissolution of the partnership itself. It is no part of the ordinary business of the copartnership, but outside and subversive of it. No such authority as that can be implied from the partnership relation. It is true, that in *Robinson* v. *Gregory*, the assignment preferred some $30,000 of partnership debts; but, as the question is one of power in a less number than the whole of the partners to transfer the entire firm property—not in the course of trade in which the firm is engaged, but in such manner as to terminate the partnership—whether the assignment is with or without preferences, can make no difference. The assignment in the present case was without preference, but the principle of law to be applied to it is not affected by that circumstance.

If, then, the defendant Coe executed the assignment, without the assent or authority of Nace his partner, it was void, and did not operate to pass the title to the firm property to the assignee named in it; and the judgment dismissing the plaintiffs' complaint was erroneous. On the contrary, if it appeared from the acts or declarations of Nace, either before or subsequent to the assignment, that he assented to making it, or that it was made by his authority, it was a valid act, and presented an insuperable obstacle to the plaintiffs' sustaining their action.

On this question the plaintiffs are met by the finding of the court that Nace assented to the making of the assignment, or rather that the letter left with Coe, when Nace absconded, was an authority from the latter to Coe to make it. It is true that the fact of assent is not expressly found; but the acts of Nace, and his communication to his partner, when absconding, is construed as an authority. I think this was the effect of the letter. It was in substance an assent on the part of Nace, and a full authority to Coe to make such disposition of the partnership property as he thought proper. Nace had been the active partner in the concern, and left it largely insolvent. Before leaving he wrote to Coe the letter in question. In it he declares that

he could not manage the debts of the firm; that he would be far out to sea before Coe would receive the letter; that he was going to California where he would start again in business with $2,100 of the funds of the firm which he had taken with him, and adds: "I hereby assign you my interest in the business of Nace & Co., and Nace & Reinnie also," —"Take charge of every thing in *our* business; close it up speedily." This, I think, under the circumstances, was a full assent on the part of Nace, and an authorization to his partner Coe to make such disposition of the partnership property as should be deemed most expedient to close up the partnership enterprise. "Take charge of everything in our business; close it up speedily;" that is, take upon yourself the entire disposition of the partnership property; close up the partnership enterprise that I have abandoned; and that you may do this effectually, and with power, I assign you my interest in the concern. After this, Nace certainly could not have been heard to object to Coe's disposition of the firm property on the ground that it had not been assented to or authorized by him.

There is no force in the suggestion that evidence of an assent or authority by the non-executing partner was inadmissible under the pleadings. The complaint treated the assignment as the act of the firm, and no charge was made that it was invalid for the reason that it was executed by one of the partners. It was asked to have the assignment declared void on the ground of fraud, and not because Coe had not the power to make it. The latter ground was first assumed on the trial, and was not an issue made by the pleadings. The defendants having this point sprung upon them at the trial, it was quite competent for them to meet it by evidence tending to show that, although the execution of the instrument was the act of one of the partners, it was assented to or authorized by the other.

Upon the whole, therefore, the legal conclusion of the judge, at special term, that the assignment was a valid instrument, and passed the co-partnership property to

the assignee, was correct. The judgment should be affirmed.

JOHNSON, J.   The ground on which the plaintiffs in their complaint sought to have the assignment set aside and declared void, was that it was made with intent to hinder, delay and defraud the plaintiffs and other creditors of the firm of Nace & Co.   This, the justice, before whom the action was tried, without a jury, found not to be the fact. The alleged invalidity is now sought to be established on the sole ground of a want of power on the part of Coe to make the assignment so as to bind both partners.   It was found upon the trial, both as a fact and a conclusion of law, that the defendant Coe who made the assignment in the name, and apparently, on behalf of both copartners, had authority from Nace, the other partner, to make it. Whether he had any such express authority, depends altogether upon the construction of the letter of Nace of the 19th April, 1856.   I think that letter contains sufficient authority to authorize the assignment, and make it a valid and operative instrument as against him.   In order to determine what power he intended to confer upon his partner in reference to a disposition of the partnership effects, we have the right to take into consideration the circumstances under which it was written.   Nace was then absconding.   He had involved the affairs of the partnership in ruin, and had determined to leave the country, and abandon all control over whatever was left.   Under these circumstances he writes to his partner, amongst other things, "take charge of everything in our business.   Close it up speedily." Also, "I hereby assign you my interest in the business of Nace & Co., and Nace & Reinnie also;" and further:  "Our own debts are maturing, and I cannot manage.   Forgive me.   You will lose nothing, but it will require much care to get through."

I can not doubt that it was the intention of Nace, by this letter, to give to his partner, whom he was thus for-

23

saking, the entire power, as far as he could, of management, control and disposition of all the partnership effects; nor that such intention is sufficiently expressed in the letter. I do not see how any other construction can be put upon this communication, under the circumstances of this case. This disposes of the whole case, and renders it wholly unnecessary to examine the question as the implied power of a partner, in such a case. The judgment should be affirmed.

All the judges were for affirmance, except SELDEN, J., who thought the letter of Nace was not good as an *assignment*, for want of consideration; and that as a *power* it was only an authority to Coe to wind up the business as a *partner*. He did not vote. Judgment affirmed.