RICHARD S. ROBERTS *v.* DITUS C. SHEPARD *and others.*

A copartnership agreement provided that either partner might dissolve and close up the copartnership, upon the failure of the other partner to contribute his proportion of the capital. *Held,* that this clause, in the event of such failure, conferred sufficient authority upon the first partner to execute a general assignment of the firm's property, for the-benefit of creditors, especially where there is evidence that the delinquent partner knew of, and consented to, the assignment.

A sale upon credit of part of their property by an insolvent firm is a circumstance which may be considered, with others, as bearing upon the question of a fraudulent intent, but alone does not necessarily establish it. And where it appears that the property was sold upon a usual credit, to a responsible person for its reasonable value, and that the debts preferred by the assignment 'subsequently made, were honestly owing, and nothing appears but that there was other property of the insolvents not covered by the sale, the court will not overrule the finding of the referee, that the sale and assignment had not been made with intent to hinder, delay, or defraud creditors.

APPEAL by the plaintiff from a judgment entered on a report of a referee. The facts are stated in the opinion of the court.

*Titus B. Eldridge,* for appellant.

*John W. Edmonds* and *E. J. Spink,* for respondents.

By THE COURT.—CARDOZO, J.—The defendants Chollar and Peters entered into copartnership to carry on business in the city of New York, under the firm of Justus Chollar & Co. Peters was to contribute $14,000 in cash, as capital, but failed to do so. Chollar agreed to and did contribute $1,000. By the articles of copartnership, it was stipulated, that if either party should neglect or refuse to pay the capital he had agreed to contribute, " the other party might have the privilege of dissolving and closing up the copartnership without the hindrance of the party so failing." On the first of February, 1860, after many ineffectual efforts to keep the partnership

alive, Chollar, who was the managing partner (Peters residing and being most of the time out of the city) having returned to the sellers some $8,000 or $10,000 worth of goods which had been recently purchased for the firm, sold to one Lewis, a man of pecuniary responsibility, the balance of the stock and fixtures of the concern, at about their fair value, taking his notes in payment, becoming due at intervals between eight and eighteen months.    On the 2d of February, 1860, Chollar (Peters being absent) executed in the name of the firm, in his own name, and in the name of Peters by Chollar, a general assignment of the partnership property, making some preferences.    The plaintiffs having obtained judgment against the firm, and executions thereon being returned unsatisfied, brought this suit to set aside the assignment, and they make two points against its validity, viz.: 1st. That Chollar had no authority from Peters to execute it; and 2d. That it was made with intent to hinder, delay, and defraud creditors.

The defendant Peters had failed to pay in his promised capital, and thereby, by the terms of the articles of copartnership, the defendant Chollar was authorized to close up the business without hinderance from Peters.    Beyond this, the proof shows that Peters was consulted by Chollar, and authorized the making of the assignment, never complaining until after it was executed, and then principally objecting because he had not selected the assignee.    He told Chollar that they must keep faith with Shepard, whom they had promised to protect, and that, if a certain trade could not be affected, "he, Chollar, must make an assignment," that "he, Chollar, must do the best he could, and that he Peters, left it all to him, Chollar."

I have no doubt that this was sufficient authority for Chollar to execute the assignment ( *Welles* v. *March,* 30 N. Y. 344). Was the assignment made with a fraudulent intent, and therefore void?

It was argued that the sale of a portion of the stock and the fixtures, upon credit, after the insolvency of the firm, and in contemplation of the assignment, had the effect to delay the creditors, and that for that reason the assignment was fraudulent, and it was claimed that *Ruhl* v. *Phillips*, decided in this

court, in February Term, 1866,* is an authority for that proposition.

It must be remembered, that every delay to which a creditor is put in the collection of his debt, is not necessarily fraudulent. Insolvency does not deprive a trader of the right to sell his property, and if the sale be made in good faith, without any intent to hinder, delay, or defraud creditors, the mere fact that it is made upon credit, does not always require that it should be declared invalid. *Ruhl* v. *Phillips* differs essentially from this case, in the fact that there the insolvents sold out all their property of every character, upon a long credit, and, as the necessary effect of such a sale was to delay the creditors until the credit expired, it was held that that delay was the object of the sale, and that therefore the transaction was fraudulent. But no such conclusion necessarily follows, when the sale is only of part, and not of the whole, of the property of the insolvents. In the present case, the proof does not show, and the complaint does not charge, that all the property of the firm was sold on credit. The remnant of the stock and the fixtures of the store were sold, but for aught that appears, there might have been a large amount of other property belonging to the firm, which could have been reached immediately. The burthen rested on the plaintiffs to show such a sale as marked the transaction as fraudulent, and therefore if it were true that the sale to Lewis covered all the property of the firm, it was for them to make that fact appear affirmatively.

A sale upon credit of part of their property, by an insolvent firm is a circumstance which may be considered, with others, bearing upon the question of fraudulent intent, but alone does not necessarily establish it; and when, as here, the evidence shows that the property was sold upon a usual credit, to a person of undoubted responsibility, for all that it was reasonably worth, and that the debts preferred by the assignment were honestly owing, and that the assignor, before making the assignment restored to persons from whom purchases had

---

* *Ante*, 45.

shortly before been made, goods to the amount of $8,000 or $10,000, which a dishonest debtor would have been likely to keep and appropriate, and nothing appears to show but that there was other property of the insolvents not covered by the sale, we cannot say that the referee drew an erroneous conclusion of fact when he held that, upon all the evidence, it was not proven that the insolvent had been actuated, in making the sale and assignment, by an intent to hinder, delay or defraud creditors. I think the judgment should be affirmed.

Judgment affirmed.