JOHN T. WILLIAMS AND BERNARD S. CLARK, APPELLANTS, *v*. GEORGE M. WHEDON, AS SURVIVOR, ETC., OF GEORGE M. WHEDON & CO., AND J. JUDSON CROSS, RESPONDENTS.

*Partnership — right of a surviving partner to make a general assignment containing preferences.*

A sole surviving partner may make a general assignment containing preferences, of all the firm property for the benefit of the firm creditors, which will be valid as against the latter, although liable to be set aside upon the application of the representatives of the deceased partner. (HAIGHT, J., dissenting.)

APPEAL by the plaintiffs from a judgment, entered on the decision of the Ontario Special Term dismissing the complaint on the merits.

The action was brought to set aside, as fraudulent against creditors, an assignment made by the defendant Whedon as survivor of the late firm of George M. Whedon & Co., composed of him and James Benwick. The latter died and afterward, in January, 1884, the defendant as such survivor made a general assignment of the property of the firm to the defendant Cross, for the benefit of its creditors, giving preferences. The defendant Whedon as such survivor was insolvent. The debts amounted to upwards of $5,000 and the nominal value of the assets was a little more than $2,000. The plaintiffs were creditors of the firm and recovered judgment against the survivor, and execution having been returned unsatisfied they bring this action.

*A. F. Baldwin & S. Baldwin* for the appellants.

*Wynkoop & Rice,* for respondent Cross.

*Jas. A. Robson,* for respondent Whedon.

BRADLEY, J.:

The trial court found that the assignment was in fact made in good faith and without any intent to defraud the creditors of the firm of George M. Whedon & Co. The only question here is whether the assignment was invalid and fraudulent against such creditors by reason of want of power to make it. Our attention is called to no case heretofore determined in this State, distinctly presenting and deciding that proposition.

In *Nelson* v. *Tenney* (36 Hun, 327) it was held that as against the personal representatives of a deceased partner, the survivor could not, as such, without their consent, make an assignment of the partnership property in trust for the benefit of its creditors. And this was put upon the ground that as between the survivor and such representatives, a trust existed which in equity imposed upon him the duties of that relation in respect to the disposition of the assets, and the closing up the partnership affairs which he was not, as against them, permitted to delegate to or devolve upon another. This has the support of the reason applicable to a trust relation in all cases which involve the exercise of personal care, judgment and discretion of the trustee in the performance of the duties and obligations created by it. By the death of his partner the defendant, as survivor for the purposes of the liquidation of the partnership business, took the place and assumed the responsibilities of the firm, but he was so far subject to the supervision of the representatives of the decedent, that interposition in equity might be had in their behalf to prevent or defeat abuse by him of the trust, with a view to the protection of the liability of the estate they represented by having a faithful application of the firm assets in payment of its debts, and for the preservation of the rights which might ultimately arise upon an accounting with him. They may, however, by their assent to the assignment by the survivor make it effectual as to them. (*Hutchinscn* v. *Smith,* 7 Paige, 26.) And the personal representatives of the deceased partner may not desire or

care to object to an assignment made without first having their consent. It cannot be assumed that they object to it until some action is taken by them for relief against it.

The question arises here whether the relation of the creditors is such as to enable them to raise the objection to the execution of the trust by the assignee. And this depends upon the question of power of the survivor. The primary liability for the payment of the partnership debts is his, and he is chargeable as effectually as if they were his individual debts, and for the purposes of the remedy at law of the creditors not distinguishable from them. (*Nehrboss* v. *Bliss*, 88 N. Y., 600; *Shale* v. *Schantz*, 35 Hun, 622.) And he has all the power which had been possessed by the firm to sell the property and pay the liabilities, and may pay some to the exclusion of others if it is not sufficient to discharge all, and in that manner accomplish such preferences as he may desire, leaving for others his liability only. The firm assets are not by reason of the death of a partner in any sense deemed the estate of a deceased person so as to permit the application of the statute prohibiting in such case preferences in distribution. And the suggestion of the chancellor to that effect in *Hutchinson* v. *Smith* (7 Paige, 35), is not supported. (*Loeschigk* v. *Hatfield*, 5 Robt., 26; S. C., *sub nom. Loeschigk* v. *Addison*, 4 Abb. [N. S.], 210; affirmed, 51 N. Y., 660.)

This power to dispose of property and give preferences in payment of partnership debts is also possessed by the respective partners during the continuance of the firm. (*Mabbett* v. *White*, 12 N. Y., 442; *Graser* v. *Stellwagen*, 25 id., 315; *Van Brunt* v. *Applegate*, 44 id., 544.) But one or more partners, without the consent of all the members of the firm, cannot make an effectual assignment of the partnership property in trust for the benefit of its creditors. And this inability rests upon the want of power. The relation of each member to the firm, for the purposes of its legitimate business, is that of agency. And the introduction of a trustee into the place of the firm to take charge of the disposition of its property, and the payment of its debts is subversive of the business purposes of the partnership, and is not within the power of any partner or number of partners less than the whole to accomplish. (*Havens* v. *Hussey*, 5 Paige, 30; *Deming* v. *Colt*, 3 Sandf.,

284; *Coope* v. *Bowles*, 42 Barb., 87; *Welles* v. *March*, 30 N. Y., 344.) But as this is wholly a question of authority, it is held that there may be circumstances under which the requisite consent may be implied in support of the assignment. (*Sheldon* v. *Smith*, 28 Barb., 593; *Palmer* v. *Myers*, 43 id., 509; *Lowenstein* v. *Flauraud*, 11 Hun, 399; *Welles* v. *March*, *supra*.) The fact of authority depends upon evidence, and will not be presumed as against a judgment creditor who may bring an action to set it aside as an unlawful disposition of the property having the effect to hinder and delay creditors, and therefore as against them fraudulent. (*Hitchcock* v. *St. John*, 1 Hoff. Chy. R., 511; *Pettee* v. *Orser*, 18 How., 442; S. C., 6 Bosw., 123; affirmed, *sub nomine Potter* v. *Orser*, 28 How., 581; *Welles* v. *March*, 30 N. Y., 344, 349.)

This remedy is not founded in any relation of trust or confidence as between the firm and its creditors, but wholly in the want of power of a partner to thus dispose of the firm property. And as between the survivor and the creditors of the firm there is no defined relation of trust. And when it is said that he holds the partnership property in trust for that class of creditors, it is understood that they have in equity a preference over his individual creditors in respect to it, and that he is not at liberty to withdraw it from application in behalf of such creditors, and the same rule applies to the property of any individual debtor in so far that it is his duty to appropriate it or its proceeds to the payment of his debts, and he is not permitted to place his property beyond their reach, but they have the right to insist that it shall be immediately and unconditionally devoted to the payment of his debts, and it is only on those terms that he is permitted to withdraw it from the ordinary process of the law. And to that extent and for such purpose his duty has the nature of a trust. This does not qualify his right to exhaust his property by preferential payment, and he may for that purpose create a trust and thus direct its execution. But the trust relation in fact which imposes the duty of payment of the partnership debts is between the survivor and the representatives of the deceased partner, and that is the trust referred to in the cases cited by the plaintiff's counsel. (*Case* v. *Abeel*, 1 Paige, 393; *Egberts* v. *Wood*, 3 id., 517; *Skidmore* v. *Collier*, 8 Hun, 50; *Hooley* v. *Gieve*, 7 Abb. N. C., 271.) The case of *Mills* v. *Argall*

(6 Paige, 577) has no application. It had relation to a limited partnership which in the respect in question was governed by the statute. (1 R. S., 767, § 21.) The relation of the partnership creditors to the partnership property or their right in respect to it, has been in no manner improved or changed by the death of the partner, and their relation to the survivor is not, nor is his to them, any different from that which existed before the death, between them and the firm in any important respect. The debts then became those of the survivor as they had before been the debts of the firm, with the ultimate right of the creditors on failure to collect of him to seek the estate of the decedent. The power to sell the property and right to make preferential payment of debts are complete in the survivor, and there is no relation between him and the creditors in the way of the right to devolve the power of disposition of the property and payment of the debts of the firm upon a trustee as effectually as the firm may have done it. He owes them no duty which requires his personal supervision and care in the business in their behalf and which he cannot delegate for execution to another. There seems no reason which permits the creditors to assert in their behalf the rights of the personal representatives of the deceased partner. The rights of the latter depend alone upon their wishes and action and are personal to them. It may be as necessary for a survivor, as a firm, to protect by assignment in trust the property from undesirable appropriation and sacrifice by litigation and legal process, and for the purpose of distribution amongst creditors. It is no less liable to such consequences in the hands of the survivor than if held by the firm. And no reason appears to us why this power as against the creditors may not be effectually exercised by the survivor. It is not a question of power, strictly as such, which enables the representatives to defeat the operation of an assignment in trust of the survivor, but is rather a violation of duty which he owes to them by reason of his trust relation and has the nature of disability which they alone may assert.

The matter of preference has no importance as bearing upon their right. The personal representatives have no legal interest in that question. Their right rests wholly upon the personal duty of the survivor, and that he is disabled from voluntarily delegating it to a trustee; and there is no principle to support the objection of the

creditors to preferential payments. If the plaintiffs can in this action succeed in setting aside the assignment they will be entitled to a judgment that their debt be first paid out of the property, and properly so, but this is not consistent with a trust in behalf of the creditors of the firm, which, if it existed, would require a *pro rata* distribution of the assets. There is no rule requiring this as before mentioned. We think there was not a want of power in the survivor to make the assignment.

In *White* v. *Union Insurance Company* (1 Nolt & McCord, 556; S. C., 9 Am. Dec., 726), the plaintiff, as assignee of the surviving partner of a firm, sought to recover of the defendant dividends due the firm, and the question was whether, first, the assignment was valid, and, second, the defendant could set off a note held by it against the assignor. The court held with the plaintiff on both questions and he recovered. That case only went to the question of power to make the assignment. Neither the rights of creditors or personal representatives were involved.

In *Egberts* v. *Wood* (3 Paige, 517), the question here was not necessarily considered; and later a non-committal expression of the chancellor in that case in respect to the right of one partner to assign the firm property in trust for creditors was converted into a contrary conclusion. (*Havens* v. *Hussey*, 5 Paige, 31.)

In *Haynes* v. *Brooks* (8 N. Y. Civ. Pro. R., 106) it was held that the plaintiffs could not raise the question because they were not partnership creditors. In *Bancroft* v. *Snodgrass* (1 Coldwell [Tenn.], 431) it was held that, as against a creditor of the firm, the assignment of a survivor in trust for creditors was fraudulent and void; and one of the reasons given was to the effect that he had no power to make it. The reasoning of the court there goes in support of the right of the representatives of the deceased partner to assert the want of such power. Beyond that we see no occasion to adopt its application.

These views lead to the conclusion that the assignment was valid. None of the exceptions are well taken.

The judgment should be affirmed.

SMITH, P. J., and BARKER, J., concurred.

HAIGHT, J. (dissenting):

In April, 1877, George M. Whedon and James Renwick entered into an agreement by which they became copartners, and as such carried on a business in coal, lumber and produce, at Stanley, N. Y., until the fall of 1883, when the copartnership was terminated by the death of Renwick. On the 14th day of January, 1884, Whedon, as the surviving member of the firm, made a general assignment for the benefit of creditors of all the copartnership property and assets, with preferences, to the defendant Cross. Subsequently, the plaintiffs, as judgment creditors of Whedon as surviving partner, brought this action to set aside the assignment as fraudulent and void.

The only question presented is whether a surviving partner can make a general assignment, giving preferences, of the copartnership property to a trustee for the payment of the debts of the copartnership. The question thus presented is not free from difficulty. It has often received the attention of the courts and has been the subject of considerable discussion, resulting in a conflict in the authorities in our own and several of the other States. In the case of *Egberts* v. *Wood* (3 Paige, 517), Chancellor WALWORTH appears to have reached the conclusion that one partner could, during the lifetime of the copartnership, make a general assignment for the benefit of creditors, and that in case of the death of one of the partners, the survivor could make the assignment; and this case seems to have been followed in the case of *Hutchinson* v. *Smith* (7 Paige, 26) and in *Palmer* v. *Myers* (43 Barb., 509). In these latter cases, however, the precise question does not appear to have been involved, and consequently they cannot be considered as controlling upon the question. In the case of *Havens* v. *Hussey* (5 Paige, 30), the chancellor takes occasion to review his decision in the case of *Egberts* v. *Wood*, and upon a more deliberate examination of the question reached the conclusion that his opinion in that case should be modified, and that it should be held that the implied authority, arising from the ordinary contract of copartnership, does not authorize one of the partners, without the assent of his copartners, to make a general assignment of the copartnership effects to a trustee for the benefit of creditors, giving preference to one class of creditors. This latter question appears to be now well settled in this State, the courts uniformly holding that one member

of the firm has not the power to make a general assignment for the benefit of creditors without the consent of the other members. (*Welles* v. *March*, 30 N. Y., 344, 350 ; *Fisher* v. *Murray*, 1 E. D. Smith, 341 ; *Deming* v. *Colt*, 3 Sanford's R., 284, 291 ; *Haggerty* v. *Granger*, 15 How., 243 ; *Pettee* v. *Orser*, 18 id., 442 ; *Kelly* v. *Baker*, 2 Hilton, 531.)

The question received elaborate discussion by Vice-Chancellor HOFFMAN in the case of *Hitchcock* v. *St. John* (1 Hoffman, 511–518) ; he reviewed the case of *Egberts* v. *Wood* and numerous other cases, and reached the conclusion that an assignment by one member of the firm is not authorized, because of the want of power in any one partner to make it ; that there is no such power during the existence or after the dissolution of the copartnership. In the case of *Deckert* v. *Filbert* (3 Watts & Serg. [Pa.] R., 454), it was held that after a dissolution of a partnership one of the firm has not power to make a voluntary assignment of the effects of the partnership for the benefit of creditors against the express consent of his copartner. In the case of *Bancroft* v. *Snodgrass* (1 Coldwell, 430, 441), it was held that after the dissolution of a partnership by the death of one member, the surviving members had no authority to make an assignment of the partnership effects to a trustee with preferences.

In the case of *Nelson, as Executor, etc.*, v. *Tenney* (36 Hun, 327), the General Term of the First Department recently held that a surviving partner has no power, without the consent and concurrence of the representatives of the deceased partner, to make an assignment to a trustee for the benefit of creditors of the firm, and to create preferences among the creditors by such an assignment, and that a court of equity will take possession of the estate by a receiver at the suit of the personal representatives, if such an attempt has been made.

It will be observed from an examination of the authorities to which I have referred, that the question is one of power. One member of a copartnership cannot make a general assignment of the copartnership effects without the consent of the other members, for the reason that he has not the power; that the act is not within the scope and object of the partnership. If the individual partner has not the power during the existence of the copartnership, can he have it after the partnership has been term-

inated by the death of one of the members? The survivor takes title to the copartnership effects it is true; but the survivor takes title for the purpose of closing up the copartnership business and distributing the surplus after paying the debts. The title of the survivor is not absolute but is in the nature of a trust. He is given no other or greater powers than he had during the existence of the copartnership. It may be argued that he has the power, as survivor, to sell the copartnership property; that he may pay such creditors as he chooses in whole or in part. True, but he had this power during the existence of the copartnership. Each partner possessed an equal general power and authority in behalf of the firm to dispose of the partnership property and effects for any and all purposes within the scope of the partnership, and in the course of its trade and business. As agent of the firm, one partner could sell, mortgage, pledge or otherwise dispose of the firm effects for partnership purposes; and yet, notwithstanding this power, he could not make a general assignment for the benefit of creditors, with preferences. And why? In entering into the contract of partnership the parties confide in the skill, capacity and integrity of each other. Each is entitled to the experience, management, judgment and discretion of the other. It was not the skill, capacity, integrity, experience, management or judgment of a third person that was contracted for, but it was of the individual members composing the firm, and neither member has the right, without the concurrence of the other members, to do any act which would defeat the object or purpose of the copartnership. Consequently the authority of each of the partners, as agent of the firm, is necessarily limited to transactions within the scope of the partnership, and a general assignment to a trustee of all the funds and effects of the partnership for the benefit of creditors is the exercise of a power without the scope of the partnership enterprise, and amounts of itself to a suspension or dissolution of the partnership. It would be the transfer to another person of the power to manage and control the copartnership property. It would deprive the other members of the firm of the skill, experience, judgment and integrity in the management of the property of the firm, of their copartner, and commit the same to a stranger in whose selection they had had no choice. In entering into the copartnership it must

be assumed that the parties contemplated the possible contingency of the death of one, and the title of the effects vesting in the survivor, who is then permitted to act without the judgment and advice or the watchful eye of the former partner. If the survivor could not, during the existence of the copartnership, by assignment transfer to another his skill, integrity, experience, management, judgment and discretion, it does not appear to me that he has power to do it after the death of his copartner. If he cannot delegate before the death of his copartner, he ought not to be permitted to after. If his living partner had the right to have the personal exercise of these powers the representatives of the deceased have the same rights, and that he should personally administer the trust which the law has placed in his hands.

Again, if an action can be maintained by the personal representatives of the deceased partner to set aside an assignment, as was held in the case of *Nelson* v. *Tenney*, I see no reason why the action may not also be maintained by the judgment creditors of the firm. The creditors are interested before the personal representatives. Whilst the survivor may not hold the property of the firm as trustee for the creditors, I see no reason why they may not be permitted to protect themselves from any illegal act of the survivor that would result in injury to them. To hold that the assignment would be valid as to the creditors, and void as to the personal representatives, would present an anomaly not contemplated by any rule of law with which I am familiar. The creditors would then be bound by the assignment, and would have to await the action of the assignee in converting the property into money to pay their debts. After waiting years without redress the personal representatives may see fit to restrain the assignee from further acting in the premises, and thus the rights of the creditors may be postponed and indefinitely delayed. It does not appear to me that such can be the law.

The judgment should be reversed and a new trial ordered.

Judgment affirmed, with costs.