JOHN F. KLUMPP et al., Appellants, *v.* GUY H. GARDNER et al., Respondents.

While one or more members of a copartnership cannot execute a general assignment for the benefit of creditors, with or without preferences, without the consent of all, if it appears by the acts or declarations, before or after the assignment of the member or members who did not sign, that he or they assented to making it, or that it was made by his or their authority, it is valid.

Defendants D. and G. were copartners; the firm being in straitened circumstances G. started for Australia, with a view of making sales of goods there in sufficient amounts to relieve it from its embarrassment, leaving D. in charge of the business. G. wrote D. from San Francisco urging him to continue the business and get extensions of time, but "should you have to make an assignment" then to make certain persons named preferred creditors and put in certain specified stocks as assets. The pressure from creditors became so great that G subsequently made a general assignment of the firm assets, executing it in the name of the firm, in the name of G. by D. "by authorization," and in his own name, and acknowledging it. *Held*, that the letter was to be understood as giving D. authority to execute the assign-

ment at any time when it should become necessary during G.'s absence; and so, the assignment was valid; that while the attempted execution and acknowledgment in the name of G. was invalid, it might be treated as surplusage.

D. had, before making the assignment, paid the debts due the persons G. had requested him to prefer. *Held*, that the fact they could not be preferred did not terminate the authority to make the assignment.

(Argued March 27, 1889; decided April 16, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 2, 1888, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*James L. Bishop* for appellants. The general assignment was void because it was not executed by G. H. Gardner, or with his consent. (*Welles* v. *March*, 30 N. Y. 344; *Williams* v. *Whedon*, 39 Hun, 98; *Fisher* v. *Murray*, 1 E. D. Smith, 341; Burrill on Assign. § 86; *Hitchcock* v. *St. John*, 1 Hoff. Ch. 511, 518; *Havens* v. *Hussey*, 5 Paige, 29, 31; *Gates* v. *Andrews*, 37 N. Y. 657, 659; *Hooper* v. *Beecher*, 7 State Rep. 406; 8 id. 898; *Beals* v. *Allen*, 18 Johns. 363; *Robertson* v. *Ketchum*, 11 Barb. 652; *Martin* v. *Farnsworth*, 49 id. 555; Story on Agency, § 62; 2 Ewell's Ev. on Agency, chap. 5; *Atwood* v. *Munnings*, 7 B. & C. 278; *Ferreira* v. *Depew*, 17 How. Pr. 418.) Neither the insolvency of the firm, nor the pressure of creditors, however great, will justify one partner by reason of the absence of his copartner, in executing an assignment on behalf of the absent partner. (*Welles* v. *March*, 30 N. Y. 344; *Robinson* v. *Gregory*, 29 Barb. 500; *Coope* v. *Bowles*, 42 id. 87; *Pettee* v. *Orser*, 6 Bosw. 123; *Loeb* v. *Pierrepoint*, 58 Iowa, 469; *Nat. Bk.* v. *Sackett*, 2 Daley, 395; *Palmer* v. *Meyers*, 43 Barb. 509; *Kelley* v. *Baker*, 2 Hilt. 531.) The assignment was not acknowledged as required by law. (Burrill on Assign. [5th ed.]

§§ 249, 376, 377; *Hardman* v. *Bowen*, 39 N. Y. 196; *Randall* v. *Dusenbury*, 63 id. 645; *Smith* v. *Boyd*, 101 id. 472; *Smith* v. *Tim*, 14 Abb. N. C. 447, and note; *Treadwell* v. *Sackett*, 50 Barb. 440; *Jones* v. *Bach*, 48 id. 568; *Lowenstein* v. *Flauraud*, 82 N. Y. 494; *People* v. *Walker*, 23 Barb. 304; 2 R. S. 756, § 4, 757, § 9, 759, § 15; *Gates* v. *Andrews*, 37 N. Y. 557.) The court erred in refusing to find material facts supported by uncontradicted evidence, which, if found, would have established or tended to establish that the assignment was made to hinder, delay and defraud creditors. (*Victor* v. *Henlein*, 34 Hun, 562; *White* v. *Fagin*, 18 Week. Dig. 358; *Iselin* v. *Henlein*, 2 How. Pr. 214; *Schultz* v. *Hoagland*, 85 N. Y. 464; *Untermeyer* v. *Hutter*, 26 Hun 147; *Talcott* v. *Hess*, 31 id. 282; *Mayer* v. *Kossuth Marx*, Daily Reg., Dec. 22, 1886; *Sheldon* v. *Sheldon*, 51 N. Y. 354; *Mason* v. *Lord*, 40 id. 476; *Bedlow* v. *N. Y. Floating Dry Dock Co.*, 20 State Rep. 707; *Amsdem* v. *Manchester*, 40 Barb. 158; *Hubbard* v. *Briggs*, 31 N. Y. 518; *Henry* v. *Foster*, Daily Reg. Oct. 19, 1887.) The plaintiffs' remedy at law was exhausted by the issue and return of the execution. (*Pierce* v. *Craine*, 4 How. Pr. 257; *Park* v. *Church*, 5 id. 381; *Chicester* v. *Cande*, 3 Con. 31; *Stephens* v. *Browning*, 1 Code R. 123; *Sears* v. *Burnham*, 17 N. Y. 445; Freeman on Executions, § 38; Code of Civ. Pro. §§ 721, 722, 723; *Douglas* v. *Haberstro*, 88 N. Y. 618; *Wright* v. *Nostrand*, 94 id. 47; *Bacon* v. *Cropsey*, 7 id. 195; *Renick* v. *Orser*, 4 Bosw. 384; *Oakely* v. *Becker*, 2 Cow. 454; *Grosvenor* v. *Hunt*, 11 How. 355; *Berry* v. *Riley*, 2 Barb. 307.) Whatever in this execution is a mere irregularity will be disregarded in this action. (*Laflin* v. *Relyea*, 7 Paige, 368; Herman on Executions, 48, § 60; 13 Tex. 379; Freeman on Executions, § 67; *Porter* v. *Goodman*, 1 Cow. 413; 19 Minn. 17; 12 id. 90; *Wright* v. *Nostrand*, 94 N. Y. 48.)

*Henry P. Stackpole* for respondents. Although authority in one or more of the members of a firm to make, without the other or others, a general assignment of the partnership prop-

erty for the benefit of the firm's creditors, is not to be implied merely from the partnership relation nor from the single additional fact of the absence of the other partner or partners, yet such authority may be given. (*Darrow* v. *Bruff*, 36 How. Pr. 479; *Emerson* v. *Senter*, 118 U. S. 3, 7; *Osborne* v. *Barge*, 29 Fed. Rep. 725, 727; *Lowenstein* v. *Flaurand*, 82 N. Y. 494; 11 Hun, 399, 400; *Welles* v. *March*, 30 N. Y. 344, 351, 353; *Kelly* v. *Baker*, 2 Hilt. 531; *Nat. Bk.* v. *Sackett*, 2 Daly, 395; *Palmer* v. *Myers*, 43 Barb. 509, 513.) It was not necessary for Mr. Daggett to execute or acknowledge the assignment in the name of Mr. Gardner at all. Having authority to assign for the firm, his execution of the assignment in the firm name and his acknowledgment in his own name that he so executed it were sufficient. (*Welles* v. *March*, 30 N. Y. 344; *Baldwin* v. *Tynes*, 19 Abb. 32, 34; *Nat. Bk.* v. *Sackett*, 2 Daly, 395; *Lowenstein* v. *Flauraud*, 11 Hun, 399, 402; 82 N. Y. 494, 499; *Osborne* v. *Barge*, 29 Fed. Rep. 725; *Lovett* v. *Steam Saw Mill Assn.*, 6 Paige, 54, 59, 60; *Van Ness* v. *Bk. of U. S.*, 13 Peters, 17; *Johnson* v. *Bush*, 3 Barb. Ch. 207, 240; *Kelly* v. *Calhoun*, 95 U. S. 710, 712, 713; *Stewart* v. *Dutton*, 39 Ill. 91; *Frostburg Mut. Build. Assn.* v. *Brace*, 51 Md. 508, 511; *City of Kansas* v. *R. R. Co.*, 77 Mo. 180; *Eppright* v. *Nickerson*, 78 id. 482.) The certificate of acknowledgment is in due form. (1 Abb. N. P. and Forms, 15, Forms 5, 6; *Lowenstein* v. *Flauraud*, 82 N. Y. 494; *Claflin* v. *Smith*, 13 Abb. N. C. 241, 246, 247, 248; *S. C.*, 35 Hun, 372, 375; *Kelly* v. *Calhoun*, 95 U. S. 710, 713; *Basshor* v. *Stewart*, 54 Md. 376, 383; *Jackson* v. *Gumaer*, 2 Cow. 552–567; *Troup* v. *Haight*, 1 Hopk. 239; *Duval* v. *Covenhoven*, 4 Wend. 561; *Averill* v. *Wilson*, 4 Barb. 180; *Hunt* v. *Johnson*, 19 N. Y. 279, 294; *West Point Iron Co.* v. *Reymert*, 45 id. 703; *Smith* v. *Boyd*, 101 id. 472, 477.) The judgment will remain undisturbed if there is any evidence at all in the case to sustain the findings of the lower court. (*Shand* v. *Hanley*, 71 N. Y. 319, 322.) Plaintiffs are bound to prove fraud if they wish to establish it. Suspicious circumstances, even when unexplained, are not enough. They

must show the suspicions to be well founded. All presumptions are in favor of innocence. (*Shultz* v. *Hoagland*, 85 N. Y. 464; *Bates* v. *McNulty*, 4 State Rep. 647.) The direction to levy improperly included the real property of the firm. (*Adsit* v. *Butler*, 87 N. Y. 585.)

HAIGHT, J. The plaintiffs, as judgment creditors, brought this action to set aside a general assignment for the benefit of creditors, made by the defendants Gardner and Daggett to the defendant Heald, upon the ground that the same was void, and was made with intent to hinder, delay and defraud creditors. The defendants, Gardner and Daggett, were copartners doing business as shipping merchants in the city of New York, under the firm name of G. H. Gardner & Co. The assignment was made on the 9th day of October, 1885, and was executed by Daggett, who first signed the firm name " G. H. Gardner & Co.;" underneath he signed the name " Guy H. Gardner, by David Daggett, by authorization." Then follows his own name. The assignee, Heald, also signed for the purpose of accepting the trust in accordance with the provisions of the statute. The assignment was executed in the presence of Henry P. Starbuck, who signed as a subscribing witness, and the same was acknowledged before a notary public by the defendant Daggett.

It is contended that the execution of the assignment and the acknowledgment thereof were not in compliance with the provisions of the statute, and that the instrument was, therefore, void. So far as Daggett attempted to execute the instrument in the name of Guy H. Gardner, and to acknowledge it in his name, we shall attempt no justification. We shall consider only the execution of the instrument by him in his own name and that of the firm, and to that extent the acknowledgment appears to be regular in form and sufficient. It thus becomes a question whether Daggett, as one of the members of the copartnership, could execute the assignment of the firm property. The rule appears to be unquestioned, and is to the effect that one or more members of a copartnership firm cannot

execute a general assignment for the benefit of creditors, with or without preferences, without the consent of the other member or members of the firm. But if it appears from the acts or declarations of such member or members, either before or subsequent to the assignment, that he or they assented to making it, or that it was made by his or their authority, it is valid. The leading case upon this question which has been cited and approved in numerous cases, is that of *Wells* v. *March* (30 N. Y. 344), and, inasmuch as the rule is not questioned, no further citation from the authorities is necessary.

It thus becomes important to determine whether Daggett executed the assignment by the authority or with the consent and approval of Gardner.

It appears from the evidence that the firm was in somewhat straitened circumstances and that Gardner determined to take a trip to Australia, and to there attempt to make sales of goods, etc., in sufficient amounts to relieve the firm from its embarrassments and pay up its liabilities; that thereupon he left New York for Australia on the 30th day of May, 1885, leaving Daggett in charge of the business. After his departure, Daggett became frightened at the growing embarrassments of the firm, and telegraphed Gardner, at San Francisco, to give up the Australian trip and to return and help him. To this Gardner replied by wire that it would be folly; that he was to sail that noon, and then wrote him a letter, under date of June sixth, from which we make the following quotations bearing upon the question under consideration: "Now, as to my coming back, I have lain awake most of the night thinking over matters and trying to decide what is best, and I cannot see any way my return would benefit us, but can see much harm, not to mention the loss of $500 in expenses. In the first place, my return would naturally make a great deal of talk, as it is known I have started, and what explanation could we give? In the second place, unless we did raise the money, we would be only worse off, for now if you have to ask for an extension of time, you can readily get it, as you

will of course say that it is only to give me time to sell the goods we own and thus pay off everything, and I will do it, too; for, if you have not sold an interest, I can afford to give, and will, if necessary, give a large inducement to the trade there to give me orders from Cat., and I can guarantee $25,000 in four to five months.  *  *  *  Should you have to make an assignment, make Mrs. A. a preferred creditor and Morton, B. & Co. for any outstanding drafts on credit. Don't forget to put in Iron Co. stock as an asset for 4,000 pounds (it will bring that easily), and Grenade stock for at least $10,000."

The letter contains further statements of their assets and liabilities and the assurance that in six months' time they must come out right side up.   He then exhorts Daggett to do the best that he can to keep the pot boiling until he could relieve him, to get extensions of time by giving notes, etc.

It further appears, from the evidence, that Daggett did continue the business until the ninth day of October, at which time the pressure from creditors was so great that the assignment in question was made.   The authority from Gardner to execute the assignment, if such exists, is to be found from the foregoing letter and the circumstances under which it was written.   The firm, as we have seen, was then in straitened circumstances; Gardner was at the point of sailing to a distant country, from which it took several weeks to communicate by mail.   Daggett had been left in charge of the business.   The letter directs him to continue it and to do the best he could to get extensions of time, etc.   But should he have to make an assignment, to prefer certain creditors, naming them.   Then follows directions in reference to certain assets.

It appears to us that this was intended and must be understood as giving Daggett authority to make an assignment, and that that authority extends to any time in the future during Gardner's absence in Australia when it should become necessary.   The instructions to continue the business, to get extensions of time, etc., of necessity lead to this conclusion.   It is true that the instructions required Mrs. A. and Morton, B. &

Co. to be preferred.    Mrs. A. referred to Mrs. Atwater from whom the sum of $5,000 had been borrowed.    Morton, B. & Co. referred to Morton, Bliss & Co. on whom Gardner was to draw his drafts for expenses while abroad.    In continuing the business, Daggett had paid Mrs. Atwater her claim, and had also paid Morton, Bliss & Co. the drafts that had been drawn upon them by Gardner, so that, at the time of the assignment, there was nothing standing to their credit, and, consequently, they could not be preferred in the assignment. The argument to the effect that the letter only gave authority to make the assignment, upon condition that these persons should be preferred as creditors, and that their claims having been paid and disposed of so that they could no longer be preferred as creditors, the authority to make the assignment also terminated, appears to us to be untenable.

As to the acknowledgment, we have already said all that was necessary. If Daggett had authority to execute the assignment of the firm property, he had authority to execute it in the name of the firm and by himself, and to acknowledge it as such, and the attempt to acknowledge it, on the part of Gardner, individually, may be treated as surplusage.

Several exceptions were taken to the refusal of the trial court to find the facts as requested by the plaintiffs. We have carefully examined the evidence bearing upon these questions. There is evidence which sustains the findings of the trial court, and the General Term has affirmed the same. Inasmuch as these exceptions involve questions of fact, and the weight of evidence, we must consider them as finally disposed of in the court below.

It follows that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.