HOMER J. MARTINE and GODFREY R. MARTINE, Appellants, *v.* WILLIAM H. ROBINSON, and LYMAN JENKINS, as Assignee, etc., of THE NEW YORK AND ORIENTAL TEA COMPANY, and Another, Respondents.

*Partnership — assignment for the benefit of creditors — executed by one partner with his co-partner's consent — express assent is not necessary — what is a sufficient consent — burden of proof.*

Where one member of a firm, in the absence of his co-partner, conveys an undivided half interest in the partnership stock to a third person, without any intimation to such purchaser of the existence of the firm, and business is thereafter carried on between the partner who makes the sale and the purchaser, the other member of the original firm does not become a partner of the purchaser.

One member of a co-partnership can, with the oral or written consent of the other partner, make an assignment of the firm assets for the benefit of creditors.

When a general assignment for the benefit of creditors is valid on its face the burden is upon those attacking the same to establish its invalidity.

It is not necessary to show an express assent to the execution of a general assignment for the benefit of creditors by a partner not executing it. It is sufficient if the assent may be inferred from the acts or declarations of such partner.

Upon the trial of an action brought to set aside an assignment executed by one of two members of a firm, the member of the firm executing the assignment testified that he had the following conversation with his partner:

"I asked him if it wouldn't be better to make an assignment than it would to let the sheriff come in and close up the business, and the doctor said he didn't know but what it would; and from that I asked him if he couldn't raise a part of the money, and he said that he couldn't; and I told him that if I would make an assignment for him to give me a paper to make an assignment, and he said I

didn't require any; he said I could go on and sell out the whole business and not ask anybody, and I told him I never heard of any two men being in partnership and one making an assignment without a paper from the other; and he said I didn't need a paper; that I was general manager, done all the business and signed all the checks; and then he said that he wasn't a partner. I think that is about all the conversation there was. This conversation took place before the assignment was made. It wasn't but two or three days before. It was right near the time."

*Held*, that such testimony, although contradicted, if believed by the referee, was sufficient to support his conclusion that the partner not executing the assignment consented to the execution thereof.

APPEAL by the plaintiffs, Homer J. Martine and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Warren on the 28th day of July, 1892, upon the report of a referee.

The action was brought to set aside a general assignment for the benefit of creditors of a firm known as " The New York and Oriental Tea Company," by parties claiming to have been co-partners with one William H. Robinson, by whom the assignment was made.

It appears that one undivided half or other interest in a certain stock of goods owned by a co-partnership composed of Homer J. Martine and Godfrey R. Martine had been conveyed by the latter to William H. Robinson, by whom and Godfrey R. Martine the business after such sale was carried on.

As stated in the opinion of the referee, " No intimation appears to have been conveyed to the defendant Robinson that Homer J. Martine had any connection with the business before he himself became connected with it, and it very clearly appears that nothing was said between him and either of the plaintiffs, or done, that would warrant any conclusion that Homer J. Martine was to or did become a member of the New York and Oriental Tea Company.

" The plaintiff Godfrey R. Martine and the defendant Robinson contradicted each other in relation to the question of the consent of the former to the assignment, but from the position taken by Mr. Martine throughout the case as to his not being a member *inter se* of the co-partnership, and through the general trend of his connection with the affairs of the company, it seems to me that the defendant Robinson's statements were correct ones, and that he did have authority and consent from his co-partner to make the assignment."

*T. D. Trumbell, Jr.*, for the appellants.

*T. W. McArthur*, for the respondents.

PUTNAM, J.:

Plaintiffs, claiming to have been co-partners with one William H. Robinson in a business carried on at Glens Falls, N. Y., under the firm name of "The New York and Oriental Tea Company," brought this action to set aside a general assignment for the benefit of creditors executed by said Robinson in the name of said firm, making said Robinson and the assignee, Lyman Jenkins, parties defendant. The defendant Jenkins, who alone answered, denied that the plaintiff Homer J. Martine was a member of said firm, and alleged that the assignment was executed by Robinson with the consent of the other plaintiff. The trial was before a referee, who reported in favor of the defendants, and from the judgment entered on his report the plaintiffs appeal.

The questions in the case were of fact, and a careful examination of the testimony has satisfied us that the learned referee did not err in his conclusions.

The evidence was such that he could properly find that the business of the New York and Oriental Tea Company from 1887 to the time of the assignment was carried on by the plaintiff Godfrey and Robinson as equal co-partners, and that the plaintiff Homer was not a member of said firm. It is true that there is evidence indicating that on April 12, 1887, Homer owned an undivided interest in common with his co-partner Godfrey in a stock of goods, one undivided half interest in which was by Godfrey sold to Robinson. But such a sale did not make Robinson and Homer co-partners. The referee doubtless relied upon the testimony of Robinson that Godfrey said that he was the owner of the stock of goods in question, and further said " he would sell one-half of the business if the references that I (Robinson) gave him were satisfactory, and that I (Robinson) should be general manager of the business and we should divide the profits equally ; we should be partners and share and share alike ; " that he (Robinson) did not know that Homer had any interest in the goods. The fact that Godfrey sold an undivided one-half of Homer's goods to Robinson would not make the latter two co-partners, unless with the consent of both parties. The testimony

of Robinson, above referred to, is contradicted by Godfrey. It was for the referee to determine between the two witnesses. He believed the statement of Robinson, and we are unable to say that he erred in so doing. Without attempting to discuss the evidence, we think all the facts and circumstances of the case tend to support the testimony of Robinson and to show that Homer was not a member of the co-partnership. The contract was made between Godfrey and Robinson while Homer was in Florida. It appears that Godfrey was authorized to manage the business for Homer. According to the testimony of Godfrey, when the sale was made to Robinson in the spring of 1887 the name of Homer was not mentioned. It was not stated that he was interested in the business. Nor does it appear by the evidence produced by plaintiffs that Robinson was in any manner informed that he, Godfrey, owned the goods purchased or any interest therein. It is difficult to see, therefore, how, on the testimony produced by the plaintiffs, the claim that there was a contract of co-partnership between Homer and Robinson can be sustained. Robinson could not be made a partner with Homer without his consent or knowledge. The plaintiffs fail to satisfactorily show any consent on the part of Robinson to enter into any relationship with Homer. Hence, the finding of the referee was justified, not only by the evidence of Robinson, but also by that produced by plaintiffs.

If Homer was, as he claimed, the owner of the goods, one-half of which was sold to Robinson April 18, 1887, and the New York and Oriental Tea Company, without due authority, appropriated and used said goods in its business, it may be that he has a claim against said company or its members, or one of them, on which he could maintain an action, but not this action. Hence, we find no error in the conclusion of the referee that Homer was unnecessarily made a party plaintiff.

It has long been settled that one member of a co-partnership can, with the oral or written consent of the other, make a general assignment for the benefit of creditors. (*Welles* v. *March*, 30 N. Y. 344; *Klumpp et al.* v. *Gardner et al.*, 114 id. 153; *Hooper et al.* v. *Baillie et al.*, 118 id. 413.)

We have already held in this case that the assignment in question was on its face valid, and, hence, that the burden was on plaintiffs to

prove its invalidity. (*Sherman* v. *Jenkins*, 53 N. Y. St. Repr. 780–782); see, also, *Hooper et al.* v. *Baillie et al., supra.*) The question then arises whether plaintiffs succeeded on the trial in showing that the assignment in question was executed without the assent of the plaintiff Godfrey. The referee found "that the said instrument was made, executed and delivered by the defendant William H. Robinson in the name of the said company and the members thereof, by and with the consent and upon the authority of the plaintiff Godfrey R. Martine."

The case of *Klumpp et al.* v. *Gardner et al.* (*supra*) holds that it is not necessary to show an express assent to the execution of a general assignment by a partner not executing it. It is sufficient if an assent may be inferred from the acts or declarations of such party. In the case cited an assent was inferred from the language of a letter written by the one not executing the assignment in which he says: "Should you have to make an assignment make Mrs. A. a preferred creditor," etc. In this case Robinson testified as follows, viz.: "I asked him if it wouldn't be better to make an assignment than it would to let the sheriff come in and close up the business, and the doctor said he didn't know but what it would; and from that I asked him if he couldn't raise a part of the money, and he said that he couldn't, and I told him that if I would make an assignment for him to give me a paper to make an assignment, and he said I didn't require any; he said I could go on and sell out the whole business and not ask anybody, and I told him I never heard of any two men being in partnership and one making an assignment without a paper from the other; and he said I didn't need a paper; that I was general manager, done all the business and signed all the checks; and then he said that he wasn't a partner. I think that is about all the conversation there was. This conversation took place before the assignment was made; it wasn't but two or three days before; it was right near the time."

This testimony, although contradicted by Godfrey R. Martine, was believed by the referee, and we cannot say that he erred in his conclusion. It appears, therefore, that while Robinson and Godfrey were speaking of a claim they were unable to meet, and of an assignment, the latter said that the former did not require any paper to make an assignment. He could go on and sell out the whole

business and not ask anybody. This shows an assent to the assignment in question on the part of the partner not executing it as clearly as was shown in *Klumpp et al.* v. *Gardner et al.* (*supra*).

We, therefore, conclude that the consent of Godfrey to the assignment was sufficiently shown. We also think it sufficiently appears that the New York and Oriental Tea Company was insolvent at the time the assignment was executed.

As in the brief of the learned counsel for the appellants no mention is made of the exceptions taken upon the trial to the rulings of the referee in receiving or excluding testimony, we do not deem it necessary to discuss them.

The judgment should be affirmed, with costs.

MAYHAM, P. J., and HERRICK, J., concurred.