Louis L. Friedman, J.
Two motions are now pending before this court, one to confirm and the other to disaffirm the report of the Official Referee to whom this matter was referred for the purpose of determining three issues. The original motion, upon which the order of reference was made, was an application to set aside a general assignment for the benefit of creditors upon the ground that the movant, an alleged partner of the assigning firm, had never joined in the execution or delivery of the assignment in question.
It appears from the papers before the court that on January 11, 1955, a general assignment for the benefit of creditors was executed by two persons, David Kahane and Saul Schreiber, who described themselves as the copartners of a firm known as Manhattan Sales Co. Acting upon the authority of this assignment, the assignee took charge of the property involved,, sold the same, and performed all of the other general duties which are ordinarily undertaken by and as a result of such assignment. Thereafter it developed that one of the creditors of the Manhattan Sales Co. had apparently received preferential treatment, in that there had been transferred to him prior *577 to the date of the said assignment, certain accounts receivable of the value of $6,520. It further developed as a result of investigation, that the person to whom such transfer had been made was a relative of one of the partners. The original answering affidavit reveals that instead of the accounts receivable, the transferee took possession of certain merchandise of the value of $5,500. In an attempt to recoup the assets so transferred, or their value, the assignee commenced an action in this court to compel payment for such merchandise. Such action is still pending and undetermined and the assignee contends that the sole purpose of the motion to vacate the assignment, is to compel the assignee to desist from his prosecution of said action. About a year and a half subsequent to the execution and delivery of the assignment, one Bella Kahane applied before this court for an order vacating the assignment, upon the alleged ground that she was one of the partners in the firm known as Manhattan Sales Co. and that since she had never joined in or delivered the assignment, it was a nullity. She contended in her moving papers that she ‘ was never consulted about the giving of the assignment for the benefit of creditors nor did she consent to the same, either directly or by implication.” She further states in her moving affidavit “ Deponent never knew that there had been an assignment made until long after it was done and the assets of the partnership sold under the alleged assignment.”
The date of the execution and delivery of the assignment was January 11, 1955. The sale of the assets took place on January 27, 1955. In her testimony before the Official Referee, she said that she first heard about the assignment ‘ the middle of January, when people came up to the house ”. She actually found out about it “ in the middle of January; about the 15th or 16th ’ \ That would be 4 days after the date when the assignment was made, and at least 12 days before the sale took place. Yet, she did nothing about the assignment which she claimed was given without her knowledge or permission, for a year and a half.
Three questions were submitted to the learned Official Referee. The first was whether the movant was in fact a partner in the firm. In that connection, the testimony points out most vividly that although she had become a record partner in April of 1948 through the filing of a certificate of doing business which so attested, she was never actually a partner of this firm. The testimony before the Official Referee reveals that she did what was done in many family partnerships and that is, become merely a record partner so that her husband’s share of the *578 earnings of the firm could he divided between the two of them with the purpose in mind of putting them in a lower income tax bracket. For many years that had been a well-recognized device, used by many individuals in an attempt to reduce the income tax bracket in which they found themselves, and consistently, the income tax authorities have rejected the claim of actual partnership, unless there has been evidence to show some actual investment or active participation in the affairs of the partnership firm. The evidence in this case indicates most graphically that the movant, who together with the wife of the other male partner, had signed the certificate of doing business in 1948 by virtue of which she now claims partnership, had never invested any money in the partnership firm, had never participated actively in the partnership business except that she claims to have done some bookkeeping on occasion, had never signed checks for the firm, had never made any determinations with respect to policy, and had never held herself out as a partner except for income tax purposes.
Some time subsequent to 1948, when the partnership certificate was filed, the government permitted married couples to declare their income on a split income basis and the court is convinced that following such time and upon advice of the firm’s accountant, the two wives of the two male partners were thereafter disregarded as having any further interest (technical though it may have been), in the firm’s assets, and they no longer remained as partners in the firm, if in fact they ever had been.
The report of the learned Official Referee to the first posed question, indicates that he came to the conclusion that because no written document changing the partnership set-up had ever been executed after 1948, the wives continued to be partners. But a partnership may be dissolved by oral as well as written contract, and this court is convinced that since the only reason for including the two wives as partners during the year 1948, vanished when the split income policy was permitted by the Internal Revenue Bureau, their alleged partnership interest in the firm vanished as well.
The second posed question is whether the moving party, Mrs. Bella Kahane, ever participated in the assignment. Although the testimony indicates without question that she never signed the assignment, the court is convinced from reading all of the minutes that if she did not expressly authorize her husband in so many words to execute the same, she certainly did so impliedly, even if she were in fact a partner. It would be rather unusual, and contrary to human experience, to believe *579 that Mr. and Mrs. Kahane, living together as man and wife, and she concededly having some knowledge of what financial difficulties the corporation was in, did not discuss the firm’s problems. Although she denies that she knew that her husband was to sign an assignment, she admits that she knew that her husband was “ going to a lawyer the next day to see what they could do to get out of this mess. ’ ’ She knew that the firm was very badly in debt because they owed almost $175,000; that something had to be done; that the business was no longer able to continue; that she knew her husband signed something but she thought he was signing a paper to settle with the creditors, and that such signing took place in the attorney’s office. Although she denied that she talked to her husband very much about the business, her other testimony indicates otherwise. If her contention is true that she and her husband did not discuss the business very much, then such testimony lends emphasis to the conclusion reached by this court that she was never actually a partner. She testified that she knew the difference between a liquidation and a settlement; and in answer to a direct question as to whether she knew that the business was being liquidated, she said: “That is right”. She said: “ They had to go out of business, that they had no assets ” and she knew they were actually going out of business.
These are but a few illustrations of the testimony of the movant which indicates most emphatically that even if she was in fact a partner, and this court believes that she was not, she at least impliedly authorized the assignment of the partnership business. The Partnership Law of the State of New York permits one partner to act in behalf of the partnership firm. However, no partner may act for the firm to execute a general assignment for the benefit of creditors “ unless authorized by the other partners ” (Partnership Law, § 20, subd. 2). In this case, the movant and her husband were living together as husband and wife and she was but a nominal partner rather than an actual one. She knew about the financial difficulties in which the partnership found itself. Certainly, there must have been a great deal of discussion between this husband and wife about-the business from which this wife as well as the husband were both deriving their livelihood. It would be difficult to accept the wife’s claim that she and her husband had never, prior to the time when he went to the lawyer’s office, discussed the future of the business. The court believes that as a partner, or even as one who is merely the wife of a partner, the movant knew what was going on and she expressly or impliedly authorized her husband to sign the assignment and *580 to transfer her interest in the partnership property, if indeed any there was. (See Welles v. March, 30 N. Y. 344; Klump v. Gardner, 114 N. Y. 153, 158; Hooper v. Baillie, 118 N. Y. 413, 416; Postman v. Rowan, 123 N. Y. S. 913.)
As to the third posed question as to whether movant had knowledge of the assignment since it was made, her testimony admits, as heretofore stated, that she knew about it within a few days of its execution, and not a long time after, as she says in her original moving affidavit. Having known about it, she certainly could not sit back and wait until a sale of the assets had taken place and other steps taken in order to carry out the purposes of the assignment, and now apply to this court to be heard. Hiving her the benefit of every question, she certainly is deemed guilty of gross laches and the law as to laches is too well settled to require the citation of any authorities.
The main motion before the court, upon which the reference was made, was to vacate the assignment. Upon all of the papers before the court and upon all of the testimony and the report made by the learned Official Beferee, the court feels that the assignment should not be disturbed. The testimony given by the attorney who appeared before the Official Beferee and who supervised the execution of the assignment indicates without question that this testimony must be and it is accepted. While the Official Beferee very carefully followed the evidence, it was restricted to the three questions which were submitted to him and he did not have the benefit of the other information which is contained in the affidavits before the court and which other facts, when read together with the testimony, are most revealing of the true picture here. Insofar as it is inconsistent with this opinion and the determination herein made, the report of the learned Official Beferee is disaffirmed and the motion to confirm is denied. The original motion to vacate the assignment is denied, with $10 costs, and, in addition thereto, the disbursements incurred by the assignee both in opposing this motion and upon the reference. Settle order on notice leaving a blank space for the insertion of the amount of disbursements, and submitting in support of the settled 'order, an affidavit setting forth the amount of said disbursements in detail.