## FRIEDBURGHER v. JABERG.

*N. Y. Supreme Court, First District, Special Term ; December, 1887.*

1. *Assignment for benefit of creditors ; insanity of partner.*] The insanity of a partner, without inquisition had, does not dissolve the partnership, nor alone empower the other partner to make an effectual assignment of the firm assets for the benefit of creditors. So held in case of acute mania of but few weeks duration.*

2. *Fraudulent conveyance ; intent.*] Where an assignment for benefit of firm creditors was shown to be fraudulent by evidence that the assignor, conscious of his firm's insolvency, transferred firm assets to an individual creditor for his individual debt, just before assigning, and selected that creditor as assignee of the firm assets,—*Held*, that a subsequent attempt at restoration of the proceeds of the property thus divested did not avail to sustain the assignment.

Trial by the court.

*Blumenstiel & Hirsch*, attorneys for plaintiff.

*Cook & Salmon*, for the assignee.

*W. W. Butcher*, for defendant Jaberg.

*Arthur Murphy*, for defendant Stadelman.

PATTERSON, J.—Three grounds are advanced as reasons for declaring the assignment invalid :

*First.* That it is not executed by both partners of the insolvent firm.

---

* See next case.

*Second.* That it is not properly acknowledged under the statute.

*Third.* That there was fraud in the misapplication of assets by one of the firm a few days before the assignment was made and delivered, and that there was a fraudulent concealment of assets in making the schedules.

As to the first ground suggested, it is claimed by the defendant that under the peculiar circumstances of this case the actual participation or assent of Stadelman, one of the partners, was not necessary ; that he was insane at the time the assignment was made, and could neither join in its execution or sanction it.

It is well settled that one partner cannot make an assignment of copartnership property to a trustee for creditors without the assent of his copartner. The case of an absconding partner is an exception (Welles *v.* March, 30 *N. Y.* 344; National Bank *v.* Sackett, 2 *Abb. Pr. N. S.* 286). A subsequent ratification is sometimes equivalent to an original authorization (Adee *v.* Cornell, 93 *N. Y.* 572), but in this case the non-assenting partner was not in flight, nor did he ever ratify the instrument ; but on the contrary he expressly repudiated it, and brought suit to have its invalidity declared by the court.

Assuming that the evidence of Dr. Wildman and Dr. Nichols, medical experts, and that of the witnesses who were called to testify to peculiar conduct of the non-assenting partner at and about the time the assignment was made, establish the fact that he was non compos mentis at that time, did that fact of itself confer the power upon and authorize one member of the firm alone to convey the partnership property to a trustee ?

I have not been referred to, nor am I aware of, any case in which this precise question has been presented, but as one of first impression it seems to me that insanity not declared by inquisition can no more be urged as a reason for dispensing with the assent of the partner than can his incapacity to concur arising from any other cause, such as absence

Friedburgher v. Jaberg.

or serious illness. Insanity does not dissolve a partnership. The prevailing opinion is that it only gives "a good and sufficient cause for a court of equity to decree a dissolution." (*Story on Part.*, sec. 295 and note; *Collyer on Part.*, vol. 1, note, sec. 101). If it does not dissolve the partnership it cannot give the right to the partner not affected with it to dissolve arbitrarily or at will. Whether a dissolution shall be decreed must rest in the sound judgment of the court, expressed after hearing all the facts, and in view of the disability being temporary or permanent.

But the execution of a general assignment operates practically a dissolution of the firm. It was said in Welles *v.* March (*supra*), "An assignment to a trustee of all the funds and effects of the partnership for the benefit of creditors is the exercise of a power without the scope of the partnership enterprise, and amounts of itself to a suspension or dissolution of the partnership itself." If the insanity of the one partner does not directly and ipso facto operate a dissolution of the firm, it does not indirectly have that effect by clothing the other partner with a power to dissolve by making the general assignment.

But, whatever the courts might decide in a case of insanity on inquest and office found, I am not disposed in this case to hold that the insanity authorized one partner to execute the assignment. The disability here seems to have been an acute mania of short duration, for the sufferer was discharged from the asylum within four weeks from the first day of his confinement, and shortly after his release he began suit to set aside his partner's act.

It can scarcely be held under this state of facts that during this period of incapacity all the power and authority of both partners inhered in Jaberg, and that by reason of the temporary disability Jaberg became vested by law with an authority to create a trust which placed beyond reach all the assets of the concern, and virtually extinguished all the interest of the disabled partner in the business.

The second ground of opposition to the assignment does

not require consideration under the view I have taken of the insufficiency of the instrument.

On the third ground—namely, acts on the part of Jaberg, committed about the time the assignment was made, showing an intent to hinder, delay and defraud creditors—I think a case has been made out entitling the plaintiffs to have the instrument set aside. Jaberg was the only actor in making the assignment, and three days before it was made, and when he knew of the insolvency of his firm, he transferred merchandise of considerable value belonging to the firm, to his individual creditor, for his individual debt, and that creditor he selected to be the assignee of the firm property. He knowingly took this merchandise from the firm creditors, and it was done in such close proximity of time to the fact of the assignment that its purpose cannot be doubted, and the making of the general assignment to the very person to whom he had given the merchandise is a circumstance of great significance.

When the schedules were made this property was omitted, and it is manifest that it was intended to conceal the transfer from the firm's creditors. The subsequent attempt at restoration of the proceeds of the sale of that property does not affect the intent of the assignor in making the assignment.

It is not necessary to comment on the various cases in which acts of extrinsic fraud have been considered as affecting the validity of an assignment to find analogies. As was remarked by Judge FINCH, in Shultz *v.* Hoagland (85 *N. Y.* 464, 473), "precedents are of little service upon questions of fact never exactly alike."

I think it is clear from the whole atmosphere of the case, without further reviewing the testimony, that the assignment was intended to hinder and delay creditors.

Judgment must be for the plaintiff.