BARCLAY v. BARRIE (two cases).

(Supreme Court, Appellate Division, First Department. February 3, 1911.)

1. PARTNERSHIP (§ 261*)—DISSOLUTION—PARTNERSHIP ARTICLES.

Provision in partnership articles that each partner shall give reasonable time to the business and shall use reasonable endeavors towards furtherance of the business, and the alleged breach thereof by either shall not give to the other any right to damages or relief till 30 days after notice by him specifying the breach claimed, and stating that for such breach damages will be claimed, does not contemplate a dissolution of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

firm ipso facto by service of notice by one partner on the other, even in the case of a long-continued absence by the other.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 600, 604; Dec. Dig. § 261.*]

2. PARTNERSHIP (§ 274*)—DISSOLUTION—DISABILITY OF PARTNER.

A partnership will not be dissolved because of a paralytic stroke to one of the partners incapacitating him for the time being from performing his duties as a partner, there being a probability that at some time in the future, before the end of the partnership term, he will be so far restored to health that he can at least partially perform his duties as a partner; especially where the partnership articles require a partner to give only reasonable time and reasonable efforts to the business, and there is no evidence that the partner's long absence has interfered with the business of the firm, or cast on the other partner any unusually onerous burden.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 621; Dec. Dig. § 274.*]

Appeals from Special Term, New York County.

Action by Reginald G. Barclay against Alexander Barrie. From the judgment, both parties appeal. Reversed, and new trial granted. See, also, 136 App. Div. 926, 120 N. Y. Supp. 1113.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

John L. Wilkie, for plaintiff.
Edward Bruce Hill, for defendant.

SCOTT, J.  This case is brought before us by cross-appeals from an interlocutory judgment of dissolution of the copartnership. Defendant appeals because, as he says, no judgment of dissolution should have been granted.  Plaintiff appeals because the dissolution is decreed to take effect as of the date of the judgment, instead of an earlier date when the plaintiff undertook to dissolve the firm by notice.

Plaintiff and defendant are copartners in the firm known as Barclay & Company No. 15, being the fifteenth renewal of a copartnership which commenced to do business in 1873 under the same firm name. Except for a comparatively brief period, defendant has been a member of all of these successive copartnerships.  The plaintiff's uncle, his brother (now deceased), and plaintiff himself have from time to time been members of the copartnership.  The present copartnership began in 1904, and was extended from time to time, having been finally extended on January 4, 1907, so that it now runs, under the terms of the partnership articles, to January 1, 1913.

The business of the firm consists of the manufacture and sale, chiefly to Central and South America, of soaps and toilet articles under proprietary or fanciful names.  There is a manufactory at Bayonne, N. J., where about 50 people are employed under a superintendent, and general offices and a storehouse in the city of New York.  The firm employs about 10 traveling salesmen, and maintains a legal department to protect its trade-mark interests.  For the use of the firm name, good will, trade-marks, copyrights, and labels the firm pays annually to plaintiff and the estate of W. O. Barclay, de-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ceased, a sum equal to 55 per cent. of the net profits of the business. Defendant's contribution to the capital of the firm is somewhat larger than plaintiff's, and he is entitled to a somewhat larger share of the profits.

The defendant appears to have always been very attentive to the business of the copartnership until May 10, 1908, when he was seized with a paralytic stroke resulting from the rupture of a blood vessel in the brain. Since that attack and down to the time of the trial he had given no attention to the business. During the greater part of the time certainly, and probably during the whole of it, his physical condition was such that he could not attend to business. The physicians called as witnesses by defendant, and who by reason of their personal observation of defendant were better able to form an opinion as to the course of the disease than were the physicians called by plaintiff, testified that said defendant had shown a constant physical improvement, and that his mental condition was and has been perfectly normal, and they agreed that in the course of time, perhaps in a few months, he would be able to resume an active part in the management of the firm business.

The plaintiff claims, in the first place, that, under one of the clauses of the articles of copartnership, he had the right to terminate the partnership in consequence of defendant's continued, although involuntary, absence, and that he exercised that right and thereby ipso facto dissolved the firm. His second claim is that defendant has become permanently physically incapacitated to bear his share of the burdens of the copartnership, and for that reason that the copartnership should be dissolved. The clause of the articles under which plaintiff claims the right to dissolve the firm by a notice reads as follows:

"(7) At all times during the continuance of said copartnership, each partner shall give reasonable time, attention and attendance to, and use reasonable endeavors in the business of said copartnership, and shall, with reasonable skill and power, exert himself for the joint interest, profit and advantage of said copartnership, and shall truly and energetically with the joint stock and increase of said business, sell, deal and merchandise. The alleged breach of any of the provisions of this section 7, of these articles by either party hereto shall not give to the other party any right to damage or to any relief whatsoever, until thirty days after written notice by such other party specifying in detail the acts or omissions deemed by such other party to constitute such breach and stating that for any such breach, accruing after such thirty days, damages will be demanded."

It is not unusual in copartnership articles to find a clause obligating the copartners to give their time and attention to the business, but the form of the clause just quoted is unusual. It calls upon each partner to give, not all of his time, but reasonable time, to the business, and to use, not his best endeavors, but reasonable endeavors, towards the furtherance of such business. Since men may fairly differ in their conceptions of what is "reasonable," the clause provides that for alleged breaches either party may claim damages of the other. A locus pœnitentiæ of 30 days is given after one party has given the other notice that it is alleged that breaches have been committed, and that notice may state, not as plaintiff undertook to do, that he would dissolve the firm, but that damages would be demanded. The

whole intent of the clause seems to be to assure to each partner a certain latitude in his personal attendance upon and devotion to the business, with a provision for the payment of damages by either one who might unreasonably take advantage of this latitude. The clause did not in our opinion contemplate a dissolution of the firm ipso facto by the service of a notice by one partner upon the other even in the case of a long-continued absence. The plaintiff's first contention therefore cannot be maintained. This disposes of his appeal. Of course, a long-continued and willful neglect of the business might furnish a sufficient ground for the dissolution of a firm, but that is not the case here presented.

The second claim to a dissolution, based upon the supposed permanent incapacity of defendant, presents an interesting question, and yet one upon which very little has been written. It is well settled that insanity on the part of one partner does not of itself dissolve a partnership, and that a copartnership will only be dissolved even upon that ground when the court is satisfied that the disability is permanent and not temporary. Friedburgher v. Jaberg, 20 Abb. N. C. 279; Raymond v. Vaughn, 128 Ill. 256, 21 N. E. 566, 4 L. R. A. 440, 15 Am. St. Rep. 112. The only case at all similar to the present, which the learning and industry of counsel have enabled them to cite to us, is Whitwell v. Arthur, 35 Bevan, 140. That case much resembles the present, and the incapacity at the time of the trial had continued for nearly the same length of time that defendant's incapacity had continued when this case was tried. Lord Romilly, M. R., said:

"This is a suit for dissolution of a copartnership on the ground of the permanent incapacity of defendant. The defendant was seized with a paralytic stroke in January, 1864, and in November following the bill was filed. I think on reading the evidence that during the whole of this interval the defendant was incapable of performing the duties which he had covenanted to perform by articles of copartnership. But I think that he has improved in health since that time, and that in June, 1865, down to which time the medical testimony extends, he was competent to perform his duties, though I cannot say that he was then perfectly competent, or as competent as he had been previous to his illness. I think on the evidence that there is not sufficient to justify the dissolution of the partnership, and the medical men look forward to an improvement in his health."

The action was accordingly stayed, with leave to plaintiff to renew the application after an interval. We consider that this outlines the correct rule to be applied to a case like the present, to wit, that a partnership will not be dissolved in consequence of the physical incapacity of a partner which is temporary in its nature, although prolonged, but will be dissolved for total and permanent incapacity. The Special Term has found that plaintiff is totally incapacitated, and that such incapacity is so far permanent that it will continue during the remainder of the copartnership term. We are of opinion that this finding is scarcely justified by what we consider the more reliable medical testimony, because given by these physicians who are best situated to form a judgment. The result of the medical testimony, as we read it, is: (1) That defendant's illness incapacitated him for the time being from performing his duties as a partner; (2) that

such incapacity continued down to the time of the trial; (3) that there is a probability that at some time in the future, before the end of the copartnership term, he will be so far restored to health that he can, at least partially, perform his duties as a partner. How full and complete performance he should be required to render in order to prevent dissolution we are not now called upon to determine. The articles required only reasonable time and reasonable efforts, and it is significant that, although plaintiff is very desirous of a dissolution, he did not testify that defendant's long absence had in any wise interfered with the business of the firm or with its prosperity, or had cast upon plaintiff himself any unusually onerous burden. Upon the whole case we are of opinion that the plaintiff failed to make out a case which would justify a dissolution. Upon a new trial a different aspect may be presented.

The judgment must be reversed, and a new trial granted, with costs to the defendant to abide the event.

CLARKE and MILLER, JJ., concur.

LAUGHLIN, J. (concurring). I agree with Mr. Justice SCOTT that neither the illness of the defendant, nor the notice served by the plaintiff, effected a dissolution of the copartnership, and that it can be dissolved on account of the illness of the defendant only by decree of the court. I do not, however, agree with the view that a copartnership may not be dissolved on account of the mental or physical incapacity of one of the partners to perform the services for the copartnership, which it was contemplated by the parties should be performed by him at the time the copartnership agreement was made, unless it is established that such incapacity is permanent; that is, I take it, unless such incapacity will continue throughout the term prescribed by the articles of copartnership for the continuance of the business. There is nothing in the nature of a copartnership by which one partner takes the other, as to mentality or health, for better or for worse. It is but an ordinary contract in which the public have no interest, and if the condition of one partner, at the time the court is called upon to decide the question, be such that he is incapacitated, either mentally or physically, from performing duties of a substantial nature, which it was contemplated would be performed by him, and it appears that he will not recover from such incapacity within a reasonable time in view of all the circumstances, I see no reason on principle why the copartnership should not be dissolved if the competent partner be unwilling to continue it longer, and therefore I think we should not follow the English authorities to the extreme extent to which they appear to go, viz., that there can be no dissolution on such grounds unless the disability be permanent, the logical effect of which ruling is that, if the disability occurs immediately after the commencement of a copartnership, the period of which is 25 years, and the disability is likely to continue for 20 years, but is likely to terminate before the expiration of the 21 years, then the copartnership cannot be dissolved. The nature of the duties which a partner

agrees to perform may be such as to entitle his copartner to a decree of dissolution, even though it may appear that at a future period, before the termination of the copartnership as originally contemplated, the incapacity of the defendant member of the firm may cease, and he may be restored to such a condition of health as to enable him to perform the duties thereafter. This question in each case should be determined, I think, on the particular facts in view of the provisions of the copartnership agreement.

In the case at bar the articles of copartnership are somewhat unusual, in that it was originally provided that:

"In the event of the interest of either partner in said business terminating by limitation agreement, death or otherwise, his rental and such interest in capital, furniture, fixtures, implements, manufactured and unmanufactured merchandise of said copartnership shall be paid to him or to his legal representatives in five years with legal interest semiannually to be computed from the date of such termination; such furniture, fixtures and implements to be valued at the price put upon them in the last preceding inventory thereof, and such unmanufactured merchandise to be valued at cost"

—and that in that event the interest of each partner in the manufactured but unsold merchandise should be estimated at the cost thereof at the time of the termination of the copartnership, and that the interest of each partner in the net profits of the business arising from merchandise sold "before such termination shall be paid within five years after such termination, without interest," and that upon the termination of the copartnership for any reason no allowance should be made to either party or to his representatives for the good will or firm name of the business, or for trade-marks, copyrights, or labels or rights to use the name, and that neither the good will, firm name, trade-marks, copyrights, or labels or rights to use the same should be treated or estimated as an asset of the copartnership, but that "such good will, firm name, trade-marks, copyrights and labels and rights shall revert to the estate of William O. Barclay, deceased, and to said Reginald G. Barclay," and that the liquidation of the business upon the termination of the copartnership in any way should be in the hands of and under the control "of the surviving and remaining partner, but the legal representatives of a deceased partner shall have a voice in such liquidation." These provisions were modified by a supplemental agreement between the parties made on the 7th day of February, 1906, which extended the copartnership until the 1st day of January, 1913, and provided:

"That in the event of the termination of said copartnership by limitation, agreement, death or otherwise, the share of the said partners shall be paid to them or to their respective representatives within five (5) years of said termination, but in installments of not less than twenty-five thousand (25,000) dollars in each and every year succeeding such termination, with interest at and after the rate of six (6) per centum."

Counsel for the plaintiff claims, and counsel for the defendant appears to concede, that the effect of these provisions is that on the dissolution of the copartnership, either before or at the expiration of the period specified for its continuance, the capital of the outgoing partner must remain in the business continued by the remaining partner

for the period of five years, the outgoing partner to have no voice in the management of the affairs of the business except as provided, as stated, for the termination by the death of one of the members, and to have no share in the profits derived from the business in which his capital is at risk and to receive only interest thereon for the use thereof. In view of these unusual provisions, and of the indefiniteness of the evidence with respect to the duties that it was expected would be performed by the defendant, and of the fact that the evidence does not clearly and satisfactorily show that at the time of the trial the defendant was unable to perform the duties which it was contemplated would be performed by him when the copartnership agreement was made, I concur in reversing the judgment and granting a new trial.

INGRAHAM, P. J., concurs.