Henry F. Camuso, Plaintiff,

against
Brooklyn Portfolio, LLC, Arthur Gallinaro, Madeline Camuso, and Regent Associates, a New York Partnership, Defendants.

Brooklyn Portfolio, LLC, Plaintiff,
against
Regent Associates, Arthur Gallinaro, Madeline Camuso, and Henry F. Camuso, Defendants.

19269/2013

Attorneys for Brooklyn Portfolio LLC
Robert Novack
Douglas Eisenstein
Bressler Amery & Ross
17 State Street, 34th Floor
New York, New York 10004 
Attorney for Defendants
Victor A Works
Law Offices of Victor A Works 65 Broadway, Suite 750
New York, New York 10006
 
Attorney for Arthur Gallinaro
Robert M Kerrigan
65 Pondfield Road
Bronxville, NY 10708
 
Attorney for Madeline Camuso
Weinstein Chase Messinger & Peters
26 Court Street, Suite 2100
Brooklyn, NY 11242


Carolyn E. Demarest, J.

The following e-filed papers read herein:
Papers Numbered
Notice of Motion/Order to Show Cause/Petition/Cross Motion and Affidavits (Affirmations) Annexed...12-32, 44-60
Opposing Affidavits (Affirmations)...34-42, 61
Reply Affidavits (Affirmations)...63, 65-81, 83-84, 85
Affidavit (Affirmation)
Memoranda of Law...33, 43, 62, 64, 82
In these joined actions relating to the sale of nine real properties, Camuso v Brooklyn Portfolio, LLC (Sup Ct, Kings County, index No. 19269/2013 (Action No. 1) and Brooklyn Portfolio, LLC v Regent Associates (Sup Ct, Kings County, index No. 507818/2013) (Action No. 2), Brooklyn Portfolio, LLC (Brooklyn Portfolio), a defendant in Action No. 1 and plaintiff in Action No. 2, moves, under motion sequence number one in Action No. 2, for an order, pursuant to CPLR 3212, granting summary judgment: (1) in its favor on its first cause of action for a declaratory judgment and its second cause of action for specific performance of an August 12, 2013 Contract of Sale (the Contract of Sale), which it entered into with Regent Associates, and (2) dismissing all claims interposed by Henry F. Camuso (Camuso) in his complaint in Action No. 1. Camuso cross-moves, under motion sequence number two in Action No. 2, for summary judgment, pursuant to CPLR 3212, on his first cause of action in Action No. 1 for a declaratory judgment declaring that the Contract of Sale is null and void and unenforceable.

BACKGROUND
On January 28, 1988, Camuso, Arthur Gallinaro (Gallinaro), Jonathan Pool, and Jack Freeman executed an Agreement of Limited Partnership (the Partnership Agreement) for Regent Associates, in which they were each named as both general and limited partners. After a buyout of the respective partnership interests of Mr. Pool and Mr. Freeman (who each had a 10% interest) in November 1990, Camuso and Gallinaro each possessed a 50% partnership interest in Regent Associates.
The Partnership Agreement sets forth that Regent Associates had entered into an [*2]agreement with the City of New York dated January 6, 1988 to purchase, and obtain financing for, nine properties, to wit: (1) 25 East 21st Street, (2) 90 East 18th Street, (3) 2102 Regent Place, (4) 2108 Regent Place, (5) 2112 Regent Place, (6) 2116 Regent Place, (7) 369 East 21st Street, (8) 2322 Bedford Avenue, and (9) 600 East 22nd Street, which are all located in Brooklyn (the properties). The Partnership Agreement refers to the properties collectively as "the Property" and provides that the purpose of the partnership was to acquire or cause the Property to be acquired in compliance with an agreement with the City of New York.
Section 1.3 of the Partnership Agreement, entitled "Term," provides, in relevant part, as follows:
"The term of the Partnership shall commence on the date of filing of the Certificate of Limited Partnership as set forth in Section 4.2 of this Agreement and shall terminate upon the earliest of the following: . . .
(c) the divesting by the Partnership of its entire interest in the Property and of title to all assets, real or personal, that it may receive from a sale, exchange or other disposition of its entire interest in the Property." Section 11.1 of the Partnership Agreement provides, in pertinent part, as follows:
"Dissolution. Subject to the provisions of section 10.1, the Partnership shall be dissolved upon the happening of any of the events specified in subsection . . . (c) of Section 1.3."
Section 2.9 of the Partnership Agreement defines "Partnership Property" as referring "collectively to the Partnership's interest in the Property and any other assets, including without limitation, promissory notes or other instruments of indebtedness, contract rights or property, real or personal, acquired by the Partnership during the term of this agreement." Section 3.1 of the Partnership Agreement, contained in Article III, entitled "Business and Purposes," states that Regent Associates' business and purposes are "[t]o acquire title to the Property and to develop, rent, sell and otherwise dispose of the Property."
Section 6.2 (b) of the Partnership Agreement provides, in pertinent part, as follows:
"Except as provided in subparagraph (a) of this Section 6.2 [providing for management by the General Partners] and subject to the restrictions on the authority of the General Partners as provided in Section 6.3, the General Partners, by a majority vote, shall make all policy and decisions in connection with the day-to-day operation of the Property and shall have the authority to carry out, implement and exercise any and all of the objects, purposes and powers of the Partnership set forth in Article III hereof . . ."
Section 6.3 of the Partnership Agreement, entitled "Restrictions on Authority of General Partners," provides, in pertinent part, as follows:
"Notwithstanding the preceding provisions of this Article VI or anything elsewhere contained in this Agreement, without in each instance receiving the prior written consent of the Limited Partners, the General Partners shall not have any authority to, and the General Partners covenant to and agree with the Limited Partners that they shall not: . . .
(c) dissolve the Partnership except as provided in this Agreement;
(d) permit to sell, transfer, assign, pledge, hypothecate or otherwise encumber any of the proceeds from the Partnership."
The nine properties, containing 71 residential units, were purchased from the City of New York in or about 1989, in connection with a vacant building program sponsored by the [*3]Community Preservation Corporation, which provided tax benefits to Regent Associates on condition that it lease the apartments to low and moderate income tenants.
Defendant Madeline Camuso (Madeline), named as a defendant in both Action No. 1 and Action No. 2, is the ex-wife of Camuso. In an action for divorce brought by Madeline against Camuso in the Supreme Court, Richmond County (Camuso v Camuso, Sup Ct, Richmond County, index No. 5817/94) (the divorce action), Madeline and Camuso entered into a Marital Stipulation dated December 16, 1997 (the Marital Stipulation), which was incorporated into a Judgment of Divorce dated April 9, 1998. Paragraph 5 (A) of Article IX of the Marital Stipulation, entitled "Property Division," provided, in relevant part, as follows:
"[Camuso's] interest in the aforesaid properties owned by Regent Associates [identified by address in a list] shall be equally divided between the parties. Accordingly, the ownership percentages shall be as follows: Arthur Gallinaro 50% interest, Henry Camuso 25% interest, and Madeline Camuso shall have 25% interest.
The partners, namely . . . Gallinaro, . . . Camuso and Madeline . . . , shall form separate and distinct management companies in order to collect the rents and pay the carrying charges associated with said properties."
In addition to the Marital Stipulation which identified Madeline as a partner in Regent Associates, Regent Associates filed tax returns, including K-1's, beginning in 2010, which identified Madeline as a 25% general and limited partner. Thus, although the Marital Stipulation was not signed by Gallinaro, Gallinaro, as a partner in Regent Associates, ratified Camuso's transfer of his 25% general and limited partnership interest to Madeline (see Decision and Order of June 9, 2014, entered into Action No. 1).
During the inquest in connection with the Judgment of Divorce in the divorce action, an Addendum to the Marital Stipulation was entered upon the record, to be read in conjunction with the Martial Stipulation, giving Camuso the right of first refusal if Madeline wanted to sell any of the marital properties that were covered by the Marital Stipulation, including the nine properties owned by Regent Associates, as follows: 
"Camuso . . . shall have the right of first refusal with respect to any sale of said properties, and said first refusal/option must meet any fair market sale and must be exercised within 45 days from the time of written notification of the fair market value."
In the Addendum to the Marital Stipulation, Camuso and Madeline acknowledged that their son, Henry Camuso, Jr. (Camuso, Jr.) would act as the sales agent and attorney with respect to the sale of any marital properties contained in the Marital Stipulation, and that he would abide by the terms and conditions made in such Addendum by providing Camuso "with written notice of any sale of the property and allowing . . . Camuso . . . his right of first refusal within said forty-five day period of time." 
There is no dispute that the nine properties owned by Regent Associates, and which are the subject of the Contract of Sale, are Regent Associates' only assets, and Brooklyn Portfolio concedes that the sale of the properties effectuates a sale of Regent Associates' sole assets. 
In a related action commenced on April 9, 2012 by Gallinaro against Camuso, Madeline, and Regent Associates, seeking the judicial dissolution of Regent Associates (Gallinaro v Camuso, Sup Ct, Kings County, index No. 500746/2012) (the dissolution action), Gallinaro sought to have a receiver appointed for Regent Associates and to have the partnership dissolved. [*4]A Stipulation signed by Gallinaro and Madeline in that action (the Dissolution Stipulation) recited that Gallinaro and Madeline desired to resolve the pending litigation amicably, that Gallinaro had received an offer to purchase all of Regent Associates' properties for $5,900,000, that the purchaser would be taking the properties "as is" and subject to numerous outstanding New York City Department of Housing Preservation and Development (HPD) violations, and that Gallinaro and Madeline "shall accept the [o]ffer immediately upon execution of this Stipulation and Order by the Court." The Dissolution Stipulation further provided that "if the sale of the Regent Associates' properties for $5,900,000 fails for whatever reason," Gallinaro and Madeline would "sell the Regent Associates' properties for the same price or better offer received within the next twelve (12) months," and that if Gallinaro received an offer to purchase the properties for an amount less than $5,900,000, he must present the offer to Madeline for her consent to sell. The Dissolution Stipulation also provided that "the gross proceeds from the sale w[ould] first be used to satisfy all closing costs and expenses," and that after the payment of expenses, "any remaining balance of the sale proceeds will be distributed between [Gallinaro] and [Madeline] and . . . Camuso according to their ownership interests." The Dissolution Stipulation was signed by Gallinaro's attorney, Richard A. Roth, Esq., on his behalf, and by Madeline, but was not signed by Camuso. The Dissolution Stipulation was not so-ordered by this Court due to the absence of Camuso's signature. The dissolution action is currently still pending before the Court. 
On August 12, 2013, Gallinaro, purporting to act on behalf of Regent Associates as its general partner, entered into a Contract of Sale with Brooklyn Portfolio to sell the properties for $5.9 million. A closing was set for November 2013, with Camuso, Jr. representing Regent Associates. Because the Contract of Sale was executed without Camuso's consent, on October 31, 2013, he commenced Action No. 1, contending that the Contract of Sale was null and void. While no temporary restraining order or injunction prevented the sale due to the filing of Action No. 1, the closing was delayed. According to Gallinaro, Brooklyn Portfolio's title company would not insure title because a notice of pendency, dated October 10, 2013, had been filed by Camuso with respect to the properties. Camuso's complaint in Action No. 1, as subsequently amended, alleges two causes of action as against Brooklyn Portfolio, Gallinaro, Madeline, and Regent Associates. Camuso's first cause of action seeks a declaratory judgment declaring the Contract of Sale with Brooklyn Portfolio to be null and void and unenforceable. Camuso's second cause of action seeks a permanent injunction enjoining Madeline from entering into any contracts on behalf of Regent Associates. 
A motion by Gallinaro, and a cross motion by Brooklyn Portfolio, to dismiss Camuso's complaint were subsequently filed. Gallinaro argued that he had a right to execute the Contract of Sale on behalf of Regent Associates as a general partner holding a 50% ownership interest, with the agreement of Madeline who owned an additional 25% interest. Camuso, in opposition, argued that Madeline was not made a partner of Regent Associates by the Marital Stipulation, but, rather, was only entitled to the income stream from the properties, and, therefore, did not have the authority to authorize the sale. Brooklyn Portfolio argued that Gallinaro was the sole general partner of Regent Associates because Camuso had transferred his interest in the partnership to Madeline without Gallinaro's consent, and that Brooklyn Portfolio had entered into the Contract of Sale under the reasonable belief that Gallinaro was acting with the full authority [*5]of the partnership. The Court, in its decision and order dated June 9, 2014, held that Madeline was a 25% partner in Regent Associates based upon Regent Associates' filing of tax returns identifying her as a general partner, as well as the Marital Stipulation and the Dissolution Stipulation which identified her as a partner, and that Gallinaro had ratified Camuso's transfer of 25% of his general and limited partnership interest to Madeline. The Court also held that Brooklyn Portfolio had not established that it was unaware of the dispute between Camuso and Gallinaro and Camuso's objection to the sale of the properties prior to the execution of the Contract of Sale and questioned whether the sale of all of the properties owned by Regent Associates was prohibited pursuant to section 6.3 of the Partnership Agreement and section 20 (3) (c) of the Partnership Law, under which a general partner is prohibited from transferring all of the assets of a partnership so as to make it impossible to carry on the ordinary business of the partnership, without the consent of all of the partners. The Court noted that, if the properties were Regent Associates' sole assets, the sale would make it impossible for it to carry on its ordinary business, and therefore would require the unanimous consent of the partners pursuant to these provisions. Both the motion and the cross motion were denied as the facts had not been sufficiently established to render a decision.
On December 12, 2013, Brooklyn Portfolio commenced Action No. 2 against Regent Associates, and, on November 5, 2014, it filed a supplemental summons and amended complaint, adding Gallinaro, Madeline, and Camuso as defendants. Brooklyn Portfolio's first cause of action seeks a declaratory judgment that the Contract of Sale was duly authorized, validly executed, and constitutes a binding obligation of Regent Associates to deliver title of the properties to it. Brooklyn Portfolio's second cause of action seeks specific performance of the Contract of Sale. Brooklyn Portfolio's third cause of action seeks damages for breach of contract.
According to Gallinaro, in October 2014, there were negotiations to sell eight of the nine properties to Brooklyn Portfolio, with a new title company representing Brooklyn Portfolio willing to take cash reserves to protect against the notice of pendency. Madeline would not agree to this sale and it did not go forward. As a consequence, as general partner, Gallinaro issued a termination notice, dated December 11, 2014 (the termination notice), advising Brooklyn Portfolio that Camuso, Jr. had been discharged as the attorney for Regent Associates because of his refusal to exercise Regent Associates' right to cancel the Contract of Sale in light of Regent's inability to deliver title in accordance with Brooklyn Portfolio's title company's conditions, and further stating that the letter served as the exercise of Regent Associates' right to terminate the parties' Contract of Sale. Gallinaro asserts that this right stems from paragraph 4.14 of the Second Rider to the Contract of Sale, which provides, in pertinent part:
"[Regent Associates] has the necessary power and authority to consummate the transactions contemplated by this Contract and has, by proper resolutions, duly authorized the execution and delivery of this Contract and the completion of the transactions contemplated herein. [Brooklyn Portfolio] acknowledges that there is presently pending litigation between certain partners of [Regent Associates]. In the event such litigation results in an order of the court which prohibits [Regent Associates] from conveying title to the pr[operties], and such prohibition is not removed by [Regent Associates] within sixty (60) days from the date of said order, [Brooklyn Portfolio] shall have the right to cancel this agreement at ant [sic] time thereafter, at which time [Regent Associates] shall [*6]promptly refund the down payment tendered hereunder which shall render this agreement canceled and of no further force and effect. [Regent Associates] shall keep [Brooklyn Portfolio] apprised of the status of such litigation and utilize its best efforts to remove any judicial obstacle to convey title hereunder."
Thereafter, Camuso, Jr. released the contract deposit of $300,000 to the attorneys for Brooklyn Portfolio, without prejudice to the rights of either party to the Contract of Sale. Gallinaro asserts that Brooklyn Portfolio has now admitted that the $300,000 deposit was not its own money, but was from the funds of Castellan Holdings, LLC, its parent company, and that Brooklyn Portfolio has failed to demonstrate that it was ready, willing and able to close on the contract of sale.
Issue has been joined, all discovery has been completed, and notes of issue have been filed in both Action No. 1 and Action No. 2. On September 2, 2015, Brooklyn Portfolio filed its instant motion for summary judgment, contending that Gallinaro, on behalf of Regent Associates, had the authority to sell the properties pursuant to the terms of the Partnership Agreement. On September 26, 2015, Camuso filed his instant cross motion for summary judgment, contending that the sale of the properties constitutes a sale of all of its assets and, therefore, without the consent of all the partners, it is prohibited by the terms of the Partnership Agreement, as well as Partnership Law § 20 (3) (c). Madeline supports Camuso's cross motion. Gallinaro argues that Brooklyn Portfolio's motion should be denied, and contends that both Action No. 1 and Action No. 2 should be dismissed on the ground that he has terminated the Contract of Sale with Brooklyn Portfolio.

DISCUSSION
In addressing Brooklyn Portfolio's motion and Camuso's cross motion, the Court notes that " "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent"'" (Willsey v Gjuraj, 65 AD3d 1228, 1229-1230 [2d Dept 2009], quoting Franklin Apt. Assoc., Inc. v Westbrook Tenants Corp., 43 AD3d 860, 861 [2d Dept 2007], quoting Greenfield v Philles Records, 98 NY2d 562, 569 [2002]). "When the terms of a written contract [such as a partnership agreement] are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations" (Franklin Apt. Assoc., Inc., 43 AD3d at 861). "The construction and interpretation of an unambiguous written contract is an issue of law within the province of the court" (id.; see also W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]). "Thus, a written [partnership] agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Greenfield, 98 NY2d at 569; Willsey, 65 AD3d at 1230).
As set forth above, section 1.3 (c) of the Partnership Agreement provides that "[t]he term of the Partnership shall terminate upon the divesting by the Partnership of its entire interest in the Property and of title to all assets, real or personal, that it may receive from a sale, exchange or other disposition of its entire interest in the Property." It is undisputed that the nine properties owned by Regent Associates are the only assets of Regent Associates and that the Contract of Sale proposed to sell all nine properties. Therefore, under the explicit terms of section 1.3 of the Partnership Agreement, the term of the Partnership would terminate upon the divesting of Regent Associates' entire interest in the properties. In addition, section 11.1 of the Partnership Agreement expressly provides that "the Partnership shall be dissolved upon the happening of any [*7]of the events specified in subsection . . . (c) of Section 1.3." Thus, pursuant to the express and unambiguous terms of section 1.3 (c) and section 11.1 of the Partnership Agreement, the sale of all of the assets of Regent Associates pursuant to the Contract of Sale would result in the dissolution of the partnership under the Partnership Agreement.
Section 6.3 (c) of the Partnership Agreement, which, as set forth above, restricted the authority of the general partners to dissolve the partnership without receiving the prior written consent of the limited partners, required the unanimous consent of all of the partners of Regent Associates to the sale of all nine properties. Unanimous consent of all of Regent Associates' partners was not obtained and the authority under which Gallinaro purported to execute the Contract of Sale on behalf of Regent Associates, the Dissolution Stipulation, was ineffective as Camuso refused to sign it, and Camuso did not otherwise consent to the sale of all nine properties. There is no evidence of a "proper resolution" authorizing execution of the Contract of Sale as recited in paragraph 4.14 of the Second Rider to the Contract of Sale.
Brooklyn Portfolio, however, relies upon section 6.2 (b) of the Partnership Agreement, and contends that, pursuant to that section, the sale of Regent Associates' nine properties required only the approval of a majority of the general partners, and that it is, therefore, entitled to specific performance. It asserts that this majority vote by the general partners was achieved because Gallinaro and Madeline, who, together, have a 75% interest in Regent Associates and constituted a majority of the general partners, both approved of a sale of the properties in the Dissolution Stipulation signed by them on June 10, 2013, prior to the entry into the Contract of Sale on August 12, 2013. Brooklyn Portfolio argues that among the purposes of the partnership, as set forth in section 3.1 of the Partnership Agreement, is the sale of the Property. 
Brooklyn Portfolio's reliance upon section 6.2 (b) of the Partnership Agreement, however, is misplaced since it only pertains to "all policy and decisions in connection with the day-to-day operation of the Property," and gives the partners "the authority to carry out, implement and exercise any and all of the objects, purposes and powers of the Partnership." The sale of all of Regent Associates' assets cannot be deemed a decision in connection with its day-to-day operations, and could not carry out or implement Regent Associates' partnership purposes or objects since such a sale would result in the cessation of its day-to-day operations and purposes and the dissolution of the Partnership. Furthermore, section 6.2 (b) expressly provides that it is "subject to the restrictions on the authority of the General Partners as provided in Section 6.3 of the Partnership Agreement," which, as previously noted, in subsection (c), requires a unanimous vote, rather than a majority vote, in the event of a dissolution of the partnership resulting from the sale of its sole assets.
Brooklyn Portfolio, in an attempt to avoid the prohibition of section 6.3 (c), argues that section 6.3 (d) of the Partnership Agreement is the controlling section with respect to the requirement of a unanimous vote. It then argues that section 6.3 (d) does not require the General Partners to obtain the written consent of the limited partners because it only pertains to the general partners' intention to sell, transfer, or assign "the proceeds from the Partnership" and not the sale of the real estate assets. It contends that while the sale of the properties does effectuate a sale of Regent Associates' sole asset, section 6.3 (d) does not apply because the sale does not affect the proceeds from the sale, which would remain an asset of the partnership available for distribution in the dissolution action.
This convoluted and strained interpretation of the Partnership Agreement is not consistent with the plain meaning of the provisions therein and is devoid of merit. Brooklyn Portfolio ignores the requirements of section 6.3 (c) of the Partnership Agreement, which mandates the unanimous consent of the partners to dissolve the partnership. The mere fact that section 6.3 (d) also requires the unanimous consent of the partners to sell, transfer, assign, pledge or in any manner encumber any of the "proceeds" of the Partnership does not absolve the partners from the requirement that unanimous consent must be obtained pursuant to section 6.3 (c) where they seek to divest the Partnership of its entire interest in the Property, resulting in the termination of the Partnership, pursuant to section 1.3 (c), and a consequent dissolution, as provided in section 11.1 upon the happening of an event specified in section 1.3 (c).
Notably, section 11.1 of the Partnership Agreement provides that dissolution becomes effective as of the date of the event giving rise to the dissolution, i.e., the date that the Partnership is divested of its entire interest in the properties pursuant to section 1.3 (c), but that the Partnership terminates only upon liquidation of the Property and distribution of the proceeds in accordance with the provisions of section 11.4, after payment of debts and liabilities of the Partnership, to the partners. As noted, the Dissolution Stipulation provides for such a distribution of the proceeds of the sale to the partners, consistent with a dissolution and termination of the partnership. Indeed, while Brooklyn Portfolio relies upon the Dissolution Stipulation as the basis for claiming that a majority of the partners effectively approved the Contract of Sale, as the Dissolution Stipulation actually results in the dissolution of Regent Associates, pursuant to section 6.3 (c) of the Partnership Agreement, a unanimous vote of the partners would be clearly necessary in order to bind Regent Associates to the Contract of Sale.
Moreover, Partnership Law § 20 (3) (c) provides:
"3. Unless authorized by the other partners or unless they have abandoned the business, one or more but less than all the partners have no authority to: . . .
(c) Do any other act which would make it impossible to carry on the ordinary business of the partnership."
In accordance with this provision, it has been held that where a sale of the real property of a partnership is not in the ordinary course of the partnership business, but would result in the entire termination of the partnership business, such that it cannot carry on its ordinary business, consent of all of the partners is required, and one partner lacks the authority, without the concurrence of his or her copartners, to convey the real property of the partnership (see Mid W. Control Corp. v Burke, 2 Misc 2d 401, 401 [App Term 1955]). "Unless specially empowered to do so, one partner has no authority to dispose of the capital assets of a partnership" (Hapworth v Grievson, 255 App Div 927, 927 [4th Dept 1938]). 
Brooklyn Portfolio argues, however, that Partnership Law § 20 (3) (c) does not apply because the sale of the properties is not an "act which would make it impossible to carry on the ordinary business of [Regent Associates]." It cites to section 3.1 of the Partnership Agreement, entitled "Business and Purpose," which states that the business and purpose of Regent Associates is "[t]o acquire title to the Property and to develop, rent, sell and otherwise dispose of the Property." It contends that this shows that the ordinary business of Regent Associates includes the sale of the properties.
Such contention is inconsistent with the history of the partnership and other terms of the Partnership Agreement taken as a whole. The law requires that a contract be interpreted so as to give meaning to all of its provisions (Muzak Corp. v Hotel Taft Corp., 1 NY2d 43, 46 [1956]). The Partnership Agreement specifically referred to the term "Property" as being the nine properties purchased from the City of New York. The undisputed evidence discloses that during its entire existence, the ordinary business of Regent Associates has been to provide affordable housing to low and moderate income tenants in the specific buildings owned by it, i.e., the nine properties, pursuant to certain agreements with the City of New York. Therefore, the sale of all nine properties would make it impossible to carry on the ordinary business of Regent Associates. To the extent that the stated purpose includes disposition of the Property, the more specific provision requiring unanimous consent for the resultant dissolution of the partnership must be given effect (see Muzak, id.) 
Brooklyn Portfolio further argues that Partnership Law § 20 (3) (c) is inapplicable to bar the sale of the properties because the proceeds of such sale could be used to purchase other properties to carry on Regent Associates' ordinary business. This hypothetical argument is unavailing since the Dissolution Stipulation expressly set forth that the proceeds of the sale would be distributed to the partners in accordance with their respective ownership interests. There is no reference to proceeds being held in a partnership bank account for further use, or any other possible partnership use of the proceeds of the sale. In fact, Madeline testified, at her deposition, that her understanding of the Dissolution Stipulation was that the proceeds would be distributed among the partners according to their percentage interest in Regent Associates and that there would be no continuation of the partnership (Madeline's Dep. Transcript at 46-47). The distribution of the proceeds of the sale to the individual partners would render impossible the carrying on of any business by Regent Associates.
Brooklyn Portfolio, though, points to the fact that Gallinaro testified that if the properties were sold, there would be cash in the bank to purchase other properties and the partnership would not be dissolved because there would be proceeds from the sale (Gallinaro's Dep. Transcript at 74-75). However, upon the distribution of the proceeds of the sale to the individual partners, the proceeds would belong to them individually, rather than to Regent Associates, which would cease to exist. Moreover, it is undisputed that the actual business of Regent Associates did not include buying and selling various properties, but only managing the nine properties listed as "The Property" in the Partnership Agreement. It is further noted that the Dissolution Stipulation was executed in the context of a dissolution action, which sought to terminate the operation of Regent Associates.
The Dissolution Stipulation was, in essence, a consent to dissolving the partnership, pursuant to section 1.3 (c) and section 11.1 of the Partnership Agreement, which Camuso did not agree to. Since this consent, which was used by Gallinaro as the basis for his authority to execute the Contract of Sale on behalf of Regent Associates, was executed by only two of the three partners of Regent Associates, it ran afoul of the prohibitions set forth in section 6.3 (c) of the Partnership Agreement and Partnership Law § 20 (3) (c), which both require the unanimous consent of the partners under these circumstances.
Brooklyn Portfolio, in seeking to avoid the unanimous authorization required by Partnership Law § 20 (3) (c), also argues that Camuso "abandoned the business" within the [*8]meaning of that section. It contends that as a result of this abandonment, Camuso's approval of the sale of the properties was not required under Partnership Law § 20 (3) (c). It asserts that such abandonment occurred because Camuso moved to Florida in 1994, and that, at that time and thereafter, he ceased participation in all partnership activities. This claim is disputed by the facts. Camuso denies that he has ever abandoned the partnership, and states that he has worked actively with his daughter, Luciann LaRocca, in the management of Regent Associates, through HMFL Management Inc., the management company retained by the partnership to manage its affairs. The Court notes the numerous court appearances by Camuso, often with his daughter Luciann, and his prompt commencement of Action No. 1, as evidence of his continuing interest and participation in the business of Regent Associates. While Camuso's Florida residency has been cited as evidence of his abandonment of Regent, Gallinaro is also a Florida resident. There is no showing of abandonment by Camuso, which has been held to occur only where a partner has absconded under circumstances indicating clearly an intention on his or her part to abandon the business to the remaining partners, such as where a partner is indebted to the firm and takes its property with him (see Welles v March, 30 NY 344, 344 [1864]). Furthermore, "abandonment" is defined as "[t]he relinquishing of a right or interest with the intention of never reclaiming it" (Black's Law Dictionary [10th ed 2014]). There is no evidence that Camuso ever sought to relinquish his partnership interest in Regent Associates. Rather, he, at all times, continued to assert his partnership rights, and to collect any income generated by the partnership. Moreover, he has been vigilant of his partnership interests in commencing and responding to this litigation.
Brooklyn Portfolio further raises the argument that despite Camuso's awareness of the Contract of Sale, he did not elect to exercise his right of first refusal to purchase the properties pursuant to the Addendum to the Marital Stipulation. In support of this contention, it asserts that Camuso learned that Regent Associates had entered into the Contract of Sale for the properties no later than July 12, 2013, relying on a letter dated July 12, 2013 by Camuso's attorney to Gallinaro's attorney in which he stated that it had come to his attention that Gallinaro was apparently proceeding to contract for the sale of the properties, to which he objected as being without legal authority and voidable because Camuso was not authorizing it as required by the Partnership Agreement. Brooklyn Portfolio argues that since Camuso failed to exercise his right of first refusal, he waived the right to subsequently challenge the sale and ratified the Contract of Sale.
This argument must be rejected. There is no written agreement between Regent Associates, which owns the properties, and Camuso that gives Camuso the right of first refusal. Rather, the right of first refusal was contained in the Addendum to the Marital Stipulation between Camuso and Madeline, to which Regent Associates was not a party. Thus, such right of first refusal only pertained to marital properties, including Madeline's 25% interest in Regent Associates, but could not encompass the sale of all of Regent Associates' nine properties, including Gallinaro's 50% interest and Camuso's own 25% interest.[FN1]

Furthermore, while Brooklyn Portfolio is seeking equitable relief and claims to have relied upon Gallinaro's apparent authority to execute the Contract of Sale on behalf of Regent Associates, the dissolution action was already pending between Gallinaro and Camuso at the time Brooklyn Portfolio entered into the Contract of Sale. Indeed, as set forth above, Brooklyn Portfolio, in paragraph 4.14 of the Second Rider to the Contract of Sale, expressly acknowledged that there was pending litigation between the partners of Regent Associates which could result in prohibiting Regent Associates from conveying title to the properties.
Although Gallinaro claims to have terminated the Contract of Sale by his termination notice, it is noted that paragraph 4.14 of the Second Rider to the Contract of Sale gave only Brooklyn Portfolio the right to cancel the agreement to purchase the properties within 60 days from the date of an order prohibiting the sale, but did not accord Regent Associates the same option to cancel the Contract of Sale. It therefore appears that the purpose of this provision was to limit Brooklyn Portfolio to the remedy of the return of its down payment in the event that it was judicially determined that Gallinaro did not have the authority to enter into the Contract of Sale on behalf of Regent Associates. The down payment has been returned and no further damages were contemplated under the terms of the Contract.
Inasmuch as the Court finds that the unanimous approval of the partners of Regent Associates for the sale of the properties to Brooklyn Portfolio was required and not obtained, Brooklyn Portfolio's motion, which seeks summary judgment in its favor in Action No. 2 on its first cause of action for a declaratory judgment that the Contract of Sale was duly authorized, summary judgment in its favor in Action No. 2 on its second cause of action for specific performance,[FN2]
and summary judgment dismissing Camuso's complaint in Action No. 1, must be denied, and Camuso's cross motion for summary judgment on his first cause of action in Action No. 1 for a declaratory judgment, declaring that the Contract of Sale between Regent Associates and Brooklyn Portfolio is null and void and unenforceable, must be granted (see CPLR 3212 [b]).
Thus, as to Brooklyn Portfolio's first cause of action, it is declared that the Contract of Sale was not duly authorized or validly executed, and does not constitute a binding obligation of Regent Associates to deliver title of the properties to Brooklyn Portfolio. Brooklyn Portfolio's second cause of action for specific performance must be dismissed since it is not entitled to this relief. Inasmuch as the Contract of Sale is declared null and void and unenforceable, Brooklyn Portfolio's third cause of action, which seeks damages for breach of contract, must also be dismissed since it is based upon the theory that it is entitled to performance of the Contract of Sale. Consequently, summary judgment dismissing Action No. 2 in its entirety must be granted (see CPLR 3212 [b]).
As to Action No. 1, Camuso is entitled to a declaratory judgment declaring the Contract of Sale with Brooklyn Portfolio to be null and void and unenforceable. Camuso's second cause of action, which seeks a permanent injunction enjoining Madeline from entering into contracts on behalf of Regent Associates is denied as no basis for such relief has been demonstrated. 
CONCLUSION
Accordingly, Brooklyn Portfolio's motion for summary judgment in its favor on its first and second causes of action in Action No. 2, and for summary judgment dismissing Action No. 1 is denied, and Camuso's cross motion for summary judgment on his first cause of action for a declaratory judgment declaring that the Contract of Sale is null and void and unenforceable is granted. Upon a search of the record, Action No. 2 is hereby dismissed in its entirety, and Camuso's motion for judgement on his second cause of action in Action No. 1 is denied.
This constitutes the decision, order, and judgment of the court.
E N T E R,
J. S. C.



Footnotes

Footnote 1:The court also notes that there was no written notice given by Camuso, Jr. to Camuso of the sale of the properties and directing him to exercise his right of first refusal within 45 days, as required by the Addendum to the Marital Stipulation. Rather, it appears that Camuso independently learned about the impending sale and immediately objected to it as unauthorized since he did not consent.

Footnote 2:Camuso further argues that Brooklyn Portfolio has not shown that it was ready, willing, and able to purchase the properties, which must result in dismissal of its claim for specific performance. However, since the court finds that Brooklyn Portfolio's claim for specific performance in Action No. 2 must be dismissed because unanimous consent by all of Regent Associates' partners to the Contract of Sale was not obtained, rendering it unauthorized, it is unnecessary to reach this argument.